MACK STUART, EXECUTOR, ET AL. *v.* ELIZABETH STUART ROBINSON.

1. **WILLS.** *Pecuniary legacy. Charge on land.*

   Where a testatrix, while on her death bed, knowing that she had and would leave neither personal property nor money, executed her will, bequeathing a pecuniary legacy, and died two days afterward, leaving only a valuable real estate, the legacy will be a charge on the land, although that be specifically devised.

2. **SAME.** *Construction. Surroundings of testator.*

   The surroundings of a testator at the time of the execution of his will may be considered in determining whether lands are charged with pecuniary legacies.

FROM the chancery court of Lincoln county.

HON. HENRY C. CONN, Chancellor.

Mrs. Robinson, appellee, was the complainant in the court below; Stuart, executor, and others, appellants, were defendants there. The suit was instituted by Mrs. Robinson, a legatee under the will, to subject lands to the payment of a legacy.

The late Miss Mary Emily Stuart, an aged maiden, who, in her lifetime lived and who died at Brookhaven, while on her deathbed made a last will and testament in these words:

"State of Mississippi, Lincoln county. I, Mary Emily Stuart, of Lincoln county, Mississippi, of sound and disposing mind and memory, make this my last will. I will, devise, and bequeath all of my estate and property as follows: To my cousin, Mrs. Elizabeth Stuart Robinson, of Washington, D. C., daughter of my uncle, James Stuart, ($500) five hundred dollars in loving remembrance. To my niece, Mrs. Martha Stuart Cochran, of Waco, Texas, a tract of Robinson county, Texas, land, known as a part of the P. S. McNeill tract, consisting of eight hundred and forty acres.

"There are relics here belonging to the Cope family, which I will describe and trust to Mrs. Gussie Stuart to hand over to Mrs. Cochran. There is a small silver spoon, one hundred years old, which came out of my grandfather Stuart's family, which is all I have of that table silver. There is one pin cushion, mounted in silver, dated 1784, formerly owned by Jennie Wilkins White, my grandmother; also one black Lama shawl, lama lace, which belonged to Mrs. Criswell, which is to be given to Mrs. Cochran. I have a book written by college students, "Addresses and Lectures to the Young," which I gave to Mrs. Cochran. Should there be any thing specially among the heirlooms that Mrs. Kate Cooney Abbott would specially like to have, I want her to have it.

"To my dear and beloved friend, Mrs. Mary Jane Grafton, widow of James Grafton, of Lincoln county, Mississippi, I leave to her the place known as the 'Abells place,' situated near Montgomery, in Lincoln county, Mississippi, in loving remembrance. I hereby appoint Mack Stuart, of Beauregard, Mississippi, my beloved cousin, as executor of my estate without bond.

"To my beloved cousin, George Robert Stuart, my entire property situated in the town of Brookhaven, Lincoln county, Mississippi. In the event of his death the property is to be given to my beloved cousin, Jennie Vee Stuart. In case both should die, the property is to belong to Mack Stuart or his

heirs. To Mrs. W. S. Bowen I leave my iron bedstead and the furniture in the room. To Mrs. East, wife of the Reverend Mr. East, who so kindly nursed me, I leave my piano. To Mrs. R. C. Boone, my beloved friend, I leave the amount of fifty ·dollars to be paid at the convenience of the executor.

"I also request my executor to settle bills of Thomas Perkins, amounting to fourteen dollars and some cents; also my drug bill at Grafton's Drug Store; also Doctor Johnson's bill for services rendered me in professional capacity.

"The said executor, Mack Stuart, shall at my death proceed to wind up the affairs of the estate as the will directs. [Fifty dollars to Mrs. East instead of the piano, and piano to Ida Keenan.]

"In witness whereof, I have signed, published, and declared this instrument as my will, at Brookhaven, Lincoln county, Mississippi, this the 3d day of May, A.D., 1899.

                              "MARY EMILY STUART.

"Witnesses: Mrs. Belle Larkin, Mrs. Jane Keenan."

Miss Stuart, the testatrix, died on May 5, 1899, two days after the execution of the will, and the will was duly proved and admitted to probate, and the executor named qualified as such.

The bill in this case avers that at the time the testatrix executed the will, and at the time of her death, she had no money or personal property save the trifling articles mentioned in the will, which were entirely of inadequate value to satisfy the pecuniary legacies made by the will; that the testatrix knew when she made the will, and when she died, that the legacies could not be paid save by charging them on the land, because, as she well knew, there was no other source from which they could be paid; that it was the intention of the testatrix to charge the lands devised by her with the payment of the legacies, and that the lands were valuable, the Brookhaven lots alone being worth several thousand dollars. The defendants,

now appellants, demurred to the bill, their demurrer was over-ruled, and they appealed to the supreme court.

*A. C. McNair* and *McWillie & Thompson,* for appellants.

Is complainant's legacy charged on the real estate? We think not. This question must be determined from the will itself. There is no ambiguity in its terms; the doctrine con-tended for by appellee that the court must construe the will in the light of the testatrix's surroundings has no application; that doctrine applies only when there is some doubt as to the meaning of the terms of the will. This is announced in the case of *Gilliam* v. *Chancellor,* 43 Miss., 437, so much relied upon by appellee. The will itself in this case must control, and the averments of the bill which are in conflict with it count for naught.

We have therefore a case in which a money legacy is given to the complainant; specific real estate is given to the devisees, defendants. It turns out that there is no money, and no source from which it can be derived. It cannot be said with any more force, for instance, that the Abells' place, devised to Mrs. Grafton, is to be subjected to Mrs. Robinson's money legacy, than it could be said, had the testatrix not owned the Abells' place, or if there had been no such place, but had been $500 in money on hand at the death of the testatrix, that the default in Mrs. Grafton's devise should be made good by encroachment upon Mrs. Robinson's legacy. The thing is as long as it is broad. In order to make a money legacy a charge on real estate, spe-cifically devised, it must appear from the will, either by ex-press direction to that effect or by clear implication from the instrument taken as a whole, that the testator so intended. The court will not find any better discussion of this question than the opinion of Chancellor Kent in *Lupton* v. *Lupton,* 2 Johns. Ch., 512. See the case with notes. 1 N. Y. Ch. Rep. (L. ed.), 614. See, also, *Knotts* v. *Bailey,* 54 Miss., 235.

The will in this case does not blend the real and personal estate as one fund in the residuary clause or otherwise. None of the devises of land are on condition that the legacies are to be paid, and there is no residuary legatee or devisee. The direction in the last clause of the will that the executor should "proceed to wind up the affairs of the estate as the will directs," does not aid Mrs. Robinson. It would have been his duty to have done so without the provision.

*P. Z. Jones,* for appellee.

We recognize the general rule that legacies are payable primarily out of the personal estate, and that generally when the personal estate proves insufficient, legacies abate; that they are not chargeable on the land except by express terms or by necessary implication. It will be noted that this is not a case where the insufficiency of the personal estate arose after the death of testator. It existed prior to her death, and prior to the making of the will, and at the time of its publication. The first provision of the will contains this clause: "I will, devise, and bequeath all my estate and property as follows," and the very next item gives a pecuniary legacy to appellee.

The question arises as to what the testatrix meant by "my estate and property." If at the time of the making of the will she had both real and personal property, does not the use of the terms "my estate and property" blend her personal and real estate in one common mass; and if this be true, is not the legacy chargeable on the lands the same as though there were a blending of the two estates in the residuary clause of the will? If she owned no personal estate at the time of the making of the will, then she intended to refer to her real estate.

Counsel for appellant contends that parol evidence is inadmissible because the will is unambiguous; that parol evidence cannot create an ambiguity and then solve it, for this would be, they say, to substitute for the will actually made by

the testator, one which the court thinks she intended to make. They fail to observe a very important distinction between the interpretation of the written words of the instrument and the direct evidence of intention on the part of the testator.

It is said in *Schlottman* v. *Hoffman,* 73 Miss., 199, "It is a well settled canon for the construction of wills that the court will take into consideration the attending circumstances of the testator, the quantity and character of his estate; the state of his family, and all the facts known to him which may be reasonably supposed to have influenced him in the disposition of his property. But when viewed in this light and from the standpoint of the testator, if the language of the will cannot be reasonably so construed as to carry out his discovered purpose, the will, and not the intent of the testator, must control. In other words, if the will as made, may without variance to its terms be so construed as to effectuate the purpose of the testator as disclosed by the will and attending circumstances, the court will so construe it."

The question of patent and latent ambiguities arises in this matter. When the will is considered in connection with the surrounding circumstances at the date of its execution, doubt arises as to the intent of the testator. The presumption is that the legacy was to be paid out of the personal estate, but the facts and circumstances show that there was no personal estate; then was it not the intention of the testatrix that this legacy be paid out of the real estate? The terms used in the will and its language are applicable alike to either personal or real estate, the words used being, "I will, devise, and bequeath all my estate and property as follows." Estate and property are of three kinds, real, personal, and mixed. And in arriving at the intention of the testatrix it becomes necessary to ascertain the condition of her estate at the time of the making of the will. It is alleged in the bill that the testatrix had no money and no personal property at the time of the making of the will. The demurrer, of course, admits that this allega-

tion is true, but the counsel contends that it makes no difference whether she had personal property or not; that the legacy fails unless there is personal property, and can in no event, under the terms of this will, be charged against the land. In the case of *Schlottman* v. *Hoffman, supra,* three kinds of ambiguities are mentioned, an intermediate class partaking of the nature of both patent and latent ambiguities; when the words are all sensible, and have a settled meaning, but at the same time admit of two interpretations according to the subject-matter in the contemplation of the parties. Our court, however, assigned this class of ambiguities to that of latent ambiguities. Ambiguity in the case at bar, if any exists, is of the nature of that here suggested. The subject-matter in the contemplation of the testatrix at the time of the making of her will was the disposition of her estate. This estate consisted mainly and almost entirely of lands. The main purpose and pole star in the construction of a will is to ascertain the intention of the testator, and in doing this it seems to be held by all the authorities that the court should place itself "in his (the testator's) situation to see things as he saw them and to apply his language as he understood and intended it." This is not done to vary the terms of the will, or contradict it in any particular, but to ascertain its true meaning. Page on Wills, sec. 823. *Ib.* sec. 816 *et seq. Bingall* v. *Volz,* 16 L. R. A., 321; *Eckford* v. *Eckford,* 26 L. R. A., 370; *Whitcomb* v. *Rodman,* 28 L. R. A., 149; *Sherwood* v. *Shewood,* 30 Am. St. Rep., 757; *Gilliam* v. *Chancellor,* 43 Miss., 437.

A case very similar to the one at bar has been decided recently by the supreme court of Missouri. It is *Lutz* v. *Clotilde,* 50 L. R. A., 847. The question of patent and latent ambiguities is not discussed. No fine sophistry is indulged in. There is a review of a great many of the authorities on this question and the result reached is adverse to the contention of the appellants in this case. It approved from *Hoyt* v. *Hoyt,* 85 N. Y., 142, this language: "It is assumed that no man

in making a final disposition of his estate will make a legacy save with the honest intention that it shall be paid. Hence it is seen from the provisions of the will prior to the legacy that the testator must have known that he had already disposed ·of his personal estate, and there would not be enough left to pay the legacy, and the bare fact of giving a legacy indicates an intention that it shall be made from the real estate."

CALHOON, J., delivered the opinion of the court.

FROM the will in this record, which the reporter will publish in full, considered in the light of the surroundings of the testatrix at the time she made it, we conclude that her intent was that the money legacies were to be satisfied out of the lands specifically devised. This is not a case where a testator left money or personalty sufficient to satisfy pecuniary bequests. Miss Stuart had neither, and knew she had neither, and it cannot be supposed that, on her deathbed, only two days before she ceased to breathe, she had the purpose to perpetrate a ghastly joke. *Clotilde* v. *Lutz* (Mo. Sup.), 57 S. W., 1018; 50 L. R. A., 847; *Davidson* v. *Coon* (Ind.), 25 N. E., 601; 9 L. R. A., 584.

*Affirmed.*