W. H. TRIBETTE ET AL. *v.* ILLINOIS CENTRAL RAILROAD CO.

1. CHANCERY JURISDICTION. *Multiplicity. Community of interest. Legal demands.*

   The jurisdiction of equity to prevent a multiplicity of suits does not extend to enjoining a number of separate actions at law against the same defendant to recover damages, where the plaintiffs have no community of interest, except in the question of law and fact involved, and cannot be proceeded against separately in equity.

2. SAME, *Injunction. Separate actions of trespass. Case.*

   Accordingly, where a number of independent property owners have brought separate actions at law to recover damages of a railroad company for the burning of their property, it cannot enjoin them in equity, on the ground of preventing a multiplicity of suits, although the burning of all resulted from the same alleged negligent act, and all the actions involve the same question of law and fact.

3. APPEAL. *Error of jurisdiction. Const.* 1890, § 147.

   An appeal from a decree enjoining such suits for multiplicity is not governed by § 147, const. 1890, prohibiting a reversal because of error as to whether the cause was of equity or common law jurisdiction, the question being merely as to the power in any court to join such parties in one suit.

FROM the chancery court of the first district of Hinds county. HON. H. C. CONN, Chancellor.

*Calhoon & Green,* for appellants.

A tort-feasor cannot invoke the jurisdiction of equity to enjoin suits begun at law for damages for the trespass growing out of a single past act, and compel the injured persons to join in one suit in equity, upon the sole ground of a common question of law and fact being involved. We submit that a careful examination of the authorities will show that this is the first case in England or America where a trespasser has obtained an injunction to shield him from actions at law for the tort on the ground of avoiding a multiplicity of suits.

1. To sustain the jurisdiction would not save a multiplicity of suits. The pleas are general denials of the declarations. Each defendant will be required by cross-bill to propound his claim with the same averments as in the declarations. The railroad company will then answer these, denying liability, and setting up contributory negligence or other affirmative matter. So the pleadings will present the same number of issues. Even if the question of negligence were a common one, there would have to be the same number of findings of fact. Besides, each issue presents a controverted question of liability, and each defendant is entitled to his jury trial. *Scott* v. *Neely*, 140 U. S., 106; *Nevitt* v. *Gillespie*, 1 How. (Miss.), 108. The allegation that a multiplicity of suits will be avoided is a conclusion of law, not a statement of fact.

Equity has no jurisdiction to enjoin, at the suit of the injured party, a suit for a single past trespass. *Mills* v. *N. O. Seed Company*, 65 Miss., 391; *Rogers* v. *Whitfield*, 26 *Ib.*, 84; *Blewitt* v. *Vaughn*, 5 How., 418; *Nevitt* v. *Gillespie, supra.*

3. In no case will the jurisdiction be exercised to restrain pending suits until the right has been established at law by one or more trials. 10 Paige, 539; 10 Ga., 395; 3 Johns., 566; 2 Johns. Ch., 281; 54 N. Y., 162; 1 High, Injunctions, § 63; 2 Story on Eq. Jur., § 859. Obviously, one suit could not in this case determine all.

The injunction was granted and sustained in the court below, following the broad language of Pomeroy. 1 Pom. Eq. Jur., §§ 181, 243, 255, 256. While the language of this author is broad enough to cover this case, we respectfully submit that his "conclusions" are not justified by the authorities he cites. All the cases cited in § 256 of that text-book involve recognized equities outside of the multiplicity of suits. In such case, the doctrine has been applied in this state. See *Coulson* v. *Harris*, 43 Miss., 728; *Richardson* v. *Scott*, 47 *Ib.*, 236; *M. & O. R. R. Co.* v. *Moseley*, 52 *Ib.*, 127; *Drysdale* v. *Pradat*, 45 *Ib.*, 445.

In none of the cases we have found has the jurisdiction

been maintained solely because separate actions involve the same questions of law and fact. In this case the defendants could not be separately enjoined, and they have no community of interest in the subject-matter. In such case the injunction will not lie. 1 High, Injunctions, §§ 12, 61, 65.

In §§ 273, 274 Mr. Pomeroy, in summarizing the doctrine, does not mention a case like this. To sustain the jurisdiction would be against reason, and without the support of a single authority.

*Williamson & Potter*, on the same side.

It is apparent that the litigation involved in the suits at law cannot be lessened by sustaining the jurisdiction in equity. A distinct issue will have to be made between complainant and each defendant. The same amount of proof must be made, and depositions taken. The costs in the chancery court will be even greater than the aggregate costs in all the suits at law. Since the bill does not show how the harrassment of complainant will be diminished, and expense saved, it fails to show any grounds for invoking the jurisdiction of equity; for the remedy is complete and adequate at law. The doctrine that equity has no jurisdiction where the remedy of law is complete, applies to bills to prevent a multiplicity of suits. 6 Cal., 33; 1 Harr. Ch., 157; 1 Br. Ch. Rep., 200; 5 Blatch., 259; 7 Ala., 585; 43 Miss., 728; 45 *Ib.*, 445; *Ib.*, 705; 141 Mass., 92.

It is not a mere matter of convenience. Plaintiffs have the right to conduct their trials at law separately, by their own chosen counsel, and in the manner they desire. Each party is suing for his own property, for a different amount, and each case necessarily presents different questions.

As to the main question involved, we submit that equity has no jurisdiction. Strictly speaking, bills of peace are of two kinds: (1) To prevent the vexatious recurrence of litigation by a numerous class insisting upon the same right; (2) To prevent the same individual from reiterating an unsuc-

cessful claim.    Bispham's Equity, § 415; Adams' Equity, § 199.    The bill in this case must come under the first division.    See Pomeroy, Eq. Jur., § 268.

The doctrine contended for by appellee finds no support anywhere, except in the text of Pomeroy.    We have carefully examined all the authorities cited by this author, and fail to find a single one that sustains the text.

Complainant comes into equity with no legal rights adjudicated, and with no equitable rights to assert.    It cannot invoke the jurisdiction to enjoin defendants separately, so we submit that the jurisdiction does not obtain.

*Brame & Alexander*, on the same side.

*Mayes & Harris*, for appellee.

The jurisdiction of equity to prevent multiplicity of suits was properly invoked in this case.    The doctrine is clearly set forth in 1 Pomeroy on Eq. Jur., §§ 243–274.

There is no authority for the contention that the original rule does not apply in favor of a tort-feasor; otherwise the distinction would have found some expression in the authorities.    It is contrary to the policy of the law to favor this class of litigation.    The court, in exercising this jurisdiction, will not be deterred by the fact that the suits enjoined are for trespass.    We refer the court to *Grand Junction Canal Co.* v. *Dimes*, 42 Eng. Ch., 38; 33 Fed. R., 629; 30 N. J. Eq., 154; 54 N. Y., 154; 2 Story on Eq. Jur., §§ 794–799; 1 Pom., Eq. Jur., § 254, note 1.

The actions enjoined in this case are for merely compensatory damages.    The value of the property may well be adjudicated in the chancery court, and, as a matter of fact, can be more accurately ascertained by the chancery court, acting through its master, than by a jury.

The right of trial by jury is not involved on this appeal.    If, on the hearing, the court holds a jury trial proper, it can be awarded.

Argued orally by *M. Green* and *C. M. Williamson* for appellants, and *E. Mayes,* for appellee.

Campbell, C. J., delivered the opinion of the court.

A number of different owners of property in the town of Terry, destroyed by fire from sparks emitted by an engine of the appellee, severally sued in the circuit court to recover of the appellee damages for their respective losses by said fire, alleged to have resulted from the negligence of the defendant. While these actions were pending, the appellee exhibited its bill against the several plaintiffs, averring that no liability, as to it, arose by reason of the fire, which arose, not from any negligence or wrong of it or its servants, but from the fault of others, for which it is not responsible; and that the plaintiffs in the different actions are wrongfully seeking to recover damages by their several actions, all of which grew out of the same occurrence, and depend for their solution upon the same questions of fact and of law. Wherefore, to avoid multiplicity of suits, and the consequent harrassment and vexation, all of the said several plaintiffs are sought to be enjoined from prosecuting their different actions, and to be brought in, and have the controversies settled in this one suit in equity. There is no common interest between these different plaintiffs, except in the questions of fact and law involved.

The injunction sought was granted, and the defendants served with process, when they appeared, and demurred to the bill, and moved to dissolve the injunction on the face of the bill. The case was heard on motion to dissolve the injunction, and it was overruled, and an appeal granted.

The question presented is as to the rightfulness of the suit against the defendants, on the sole ground that their several actions at law involve the very same matters of fact and law, without any other community of interest between them. The granting and maintaining the injunction are fully sustained by Pomeroy's Equity Jurisprudence, vol. 1, § 255, *et seq.,* and

it is probable that any judge authorized would have granted the injunction upon the text cited. But we affirm, after careful examination and full consideration, that Pomeroy is not sustained in his " conclusions," stated in § 269 of his most valuable treatise, and that the cases he cited do not maintain the proposition that mere community of interest " in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body," is ground for the interposition of chancery to settle, in one suit, the several controversies. There is no such doctrine in the books, and the zeal of the learned and usually accurate writer mentioned, to maintain a theory, has betrayed him into error on this subject. It has so blinded him as to cause the confounding of distinct things in his view of this subject, to wit: joinder of parties, and avoidance of *multiplicity of suits*. It has been found that many of the cases he pressed into service to support his assertion are on the subject of joinder, where confessedly there could be no doubt that the matter was of equity cognizance. Every case he cited to support his text will be found to be either where each party might have resorted to chancery or been proceeded against in that forum, or to rest on some recognized ground of equitable interference other than to avoid multiplicity of suits. The cases establish this proposition, viz.: Where each of several may proceed or be proceeded against in equity, their joinder as plaintiffs or defendants in one suit is not objectionable; but this is a very different question from that, whether, merely because many actions at law arise out of the same transaction or occurrence, and depend on the same matters of fact and law, all may proceed or be proceeded against jointly in one suit in chancery; and it is believed that it has never been so held, and never will be, in cases like those here involved. Where each of several parties may proceed in equity separately, they are permitted to unite, and make common cause against a common adversary, and one may

implead in one suit in equity many who are his adversaries, in a matter common to all in many cases, but never when the only ground of relief sought is that the adversaries are numerous, and the suits are for that not in itself a matter for equity cognizance. Attention to the distinction mentioned will resolve all difficulties in considering the many cases on this subject. There must be some recognized ground of equitable interference, or some community of interest in the subject-matter of controversy, or a common right or title involved, to warrant the joinder of all in one suit; or there must be some common purpose in pursuit of a common adversary, where each may resort to equity, in order to be joined in one suit; and it is not enough that there "is a *community of interest merely in the question of law or of fact involved,*" etc., as stated by Pomeroy in § 268. Although he asserts that this early theory has long been abandoned, he fails utterly to prove it. An examination of the cases he cited under § 256 *et seq.*, will show this to be true. The opinion of the justice (Harlan) in 43 Fed. Rep., 824, does support the text of Pomeroy, and cites 1 Pom. Eq. Jur., §§ 245, 255, 257, 268 and 273, and *Crews* v. *Burcham,* 1 Black, 352, 357. We are content with what has already been said as to the text of Pomeroy, and affirm that not one of his citations sustains his conclusion and the language of Harlan, J., in the case cited; nor does *Crews* v. *Burcham* sustain the language of Justice Harlan. It belongs to the class of cases where each party might have brought his bill, and all who had a common cause were permitted to make common contest in chancery with their adversaries who were united by a common tie.

The decision of the case in which Harlan, J., gave his support to the doctrine of Pomeroy, is not complained of, but the opinion is not justified by any case with which we have been made acquainted. The case was one in which each might have brought his separate bill to quiet title, and all concerned were permitted to unite in one bill against their

common adversary; and so, it is believed, will be found all the cases on this subject. Certainly, those relied on by Pomeroy are of this character. Those cited in the note to § 269, in which he asserts most broadly the doctrine we combat, are *Keese* v. *Denver*, 10 Col., 112; *Carlton* v. *Newman*, 77 Me., 408; *DeForest* v. *Thompson*, 40 Fed. Rep., 375; *Osborne* v. *Railroad Co.*, 43 Fed. Rep., 824; *Railroad Co.* v. *Gibson*, 85 Ga., 1; *The Schuyler Fraud Case*, 17 N. Y., 592; *The Water Company Case*, L. R., 2 Ch., 8; and the case of the *Complicated Contract*, 7 N. J. Eq., 440. The case in 43 Fed. Rep., 824, has already been noticed *supra*. The opinion in the case in 10 Colorado quotes the language of Pomeroy's Eq. Jur., § 269, but the case was one where one or more plaintiffs may sue in equity for the benefit of all others similarly situated.

*Carlton* v. *Newman*, 77 Me., 408, affirms the jurisdiction of equity to enjoin the collection of an illegal tax for the purpose of preventing multiplicity of suits, where the entire levy, affecting all the tax-payers, was illegal. It appears to be exceptional, and to rest on peculiar grounds, not applicable to the case before us. The opinion cites Pomeroy's Eq., § 269, but seems to rest on the proposition that the whole tax was illegal.

The case in 40 Fed. Rep., 375, was that of a plaintiff exhibiting a bill to set aside a sale of land, and vacate deeds made in pursuance of it, against numerous parties, all of whom claimed by separate parcels, but under the proceeding attacked as void. A bill might have been exhibited against each one separately, and it was held to be proper to unite all in one suit. That was clearly right; but Jackson, J., in his opinion, concurred in by Harlan, Justice, cited 1 Pomeroy's Equity Jurisprudence, §§ 245–269, inclusive, which we have shown to be unsupported by any case of authority.

The case in 85 Georgia is where a few persons, as *representatives of a class* consisting of many, exhibited a bill in behalf of all, and lends no countenance to the proposition for which it is cited. The cases in 17 N. Y., 592, L. R., 2 Ch. 8, and 7

N. J. Eq., 440, furnish no sort of support to the text of the author, and it is confidently claimed that every case that can be found, if entitled to any consideration, will be seen to be one resting on some other principle than that for which it has been cited in the connection now under review. And, while judges have, in various instances, cited and sometimes quoted Pomeroy, in the language above characterized as unsupported, in every instance, we think, the case will be found not to call for it, but to be resolvable, independently of it, upon other grounds of equitable interference, and, in our opinion, not one of the learned courts which have cited or quoted Pomeroy in the way mentioned, would sustain this bill if it was before it for decision. There is danger that by frequent repetition and piling up assertions—judges citing and quoting text-books, and text writers citing the cases thus referring to them—a false doctrine may acquire strength enough to dispute with the true; but we do not believe that any accumulation of dogmatic assertions and citations and quotations can ever establish the proposition that a defendant sued for damages by a dozen different plaintiffs, who have no community of interest or tie or connection between them, except that each suffered by the same act, may bring them all before a court of chancery in one suit, and deny them their right to prosecute their actions separately at law, as begun by them. It has never been done. There is no precedent for it, and, while this is not conclusive against it, it is significant and suggestive. If it is true, as stated by Pomeroy, and some quoting him, that mere community of interest in matters of law and fact makes it admissible to bring all into one suit in chancery, in order to avoid multiplicity of suits, all sorts of cases must be subject to the principle. Any limitation would be purely arbitrary. It must be of universal application, and strange results might flow from its adoption. The wrecking of a railroad train might give rise to a hundred actions for damages, instituted in a dozen different counties, under our law as to the venue of suits against

railroad companies, in some of which executors or adminis-
trators, or parents and children might sue for the death of a
passenger, and, in others, claims would be for divers injuries.
If Pomeroy's test be maintained, all of these numerous
plaintiffs, having a *community of interest in the questions of fact
and law*, claiming because of the same occurrence, depending
on the very same evidence, and seeking the same kind of re-
lief (damages), could be brought before a chancery court in
one suit to avoid multiplicity of suits! But we forbear.
Surely the learned author would shrink from the contempla-
tion of such a spectacle; but his doctrine leads to it, and
makes it possible.

The learned counsel for the appellee here felt the difficulty
of the possible result of the doctrine contended for, and
sought to limit its application to controversies about prop-
erty, excluding those for injuries to be redressed by the es-
timation of juries; but, as we have said, any such restriction
is arbitary and inadmissible. If preventing multiplicity of
suits is such a good thing as to justify bringing into one suit all
who are interested in the same questions of law and fact, it
is needful that its benefits shall be extended to all cases where
it can be applied, and not restricted in its beneficent opera-
tion. It should have full sway in all classes of cases. The
sole object, we are told, of the doctrine is to prevent multi-
plicity of suits by uniting all who have a common interest in
the same questions in one suit, and it is quite as important to
effect this in one class of cases as another; and, as actions
against railroad companies are quite numerous these days, it
is of especial concern to prevent multiplicity in this class of
cases. Therefore, if the doctrine advanced were sound, it
would have to be applied wherever the conditions prescribed
exist—that is, wherever many are interested in the same
questions of fact and law. That this is inadmissible must be
apparent.

The case of *Supervisors* v. *Deyoe*, 77 N. Y., 219, contains a
good illustration of what we have said. In that case the suit

against numerous parties was maintained, because it com-
bined elements of jurisdiction in each of the cases of inter-
pleader, bill of peace and cancellation of written instruments.

·The recovery of damages for a tort or breach of contract
does not pertain to courts of chancery, which decree damages
only in a very limited class of cases, or under peculiar cir-
cumstances, or as an incident to some other relief.   1 Pome-
roy's Eq. Jur., § 112; 2 Story's Eq., § 799.   Even this learned
author, Pomeroy, does not say that the existence of numer-
ous suits for damages by a tort or breach of contract, where
·each case depends on the same questions of fact and law, may
be drawn into chancery in one suit, and no case has been
found to warrant it.   Every case cited by Pomeroy, and by
the learned and diligent counsel in this case, has been exam-
ined, and may be disposed of on some other principle acted
on by courts of chancery than that contended for, and nec-
essary to sustain the bill in this case.   Every case is resolv-
able on some well-recognized principle of equity procedure,
and not one sustains this bill.

The cases repudiating the doctrine contended for are nu-
merous.   We do not cite them, for it is unnecessary, in view
of the fact that not a case has been found in England or
America to sustain this bill.

No question as to mistake of jurisdiction between courts
of law and chancery, within the contemplation of section
147 of our constitution, arises in this case, for, if we had
only one forum armed with full power to administer all re-
medial justice, joinder of all these parties in one action would
not be admissible.   Bliss on Code Pleading.   This author
says, in section 76:   " Two or more owners of mills pro-
pelled by water are interested in preventing an obstruction
above that shall interfere with the down-flow of the water,
and may unite to restrain or abate it as a nuisance, but they
cannot hence unite in an action for damages; for, as to the
injury suffered, there is no community of interest.   There is
no more a common interest than though a carrier had, at one

time, carelessly destroyed property belonging to different persons, or the lives of different passengers;" thus putting the very case we have. The supreme court of California has cited with approval this very section.

We thus confront Pomeroy with an equally intelligent author, and a decision by the supreme court of his own state, at war with his views on this subject, if, indeed, it is true that he would uphold this bill, which we do not believe.

We have written so much to combat error, supported by a distinguished author, and which has had a misleading influence, which should be counteracted before further injury results from it, as far as in our power to do it.

*Reversed, and injunction dissolved.*