CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

MARCH TERM, 1910.

---

CUMBERLAND TELEPHONE & TELEGRAPH CO. *v.*
J. F. WILLIAMSON.

[57 South. 559.]

1. CHANCERY JURISDICTION. *Multiplicity of suits. Community of interest. Injunction.*

The jurisdiction of equity to prevent a multiplicity of suits does not extend to enjoining a number of separate suits at law against the same defendant to recover damages, where the plaintiffs have no community of interest, except in the questions of law and fact involved.

2. SAME.

In order for equity to take jurisdiction upon the ground of multiplicity of suits, there must be some recognized ground of equitable interference or some community of interest in the subject-matter, or a common right or title involved to warrant the joinder of all in one suit or there must be some common purpose in pursuit of a common adversary, where each may resort to equity, in order to be joined in one suit.

101 Miss.]                    (1)

101 Miss.—1

3. SAME.

> Where there is an injury continuing in its nature, which results in the bringing of numerous suits against a person, equity will intervene to prevent a multiplicity of suits.

APPEAL from the chancery court of Panola county.

HON. I. T. BLOUNT, Chancellor.

Suit by Cumberland Telephone & Telegraph Co., against J. F. Williams et al. From a decree dismissing the bill complainants appeal.

The facts are fully stated in the opinion of the court.

*Harris & Potter* and *Tim. E. Cooper* for appellant.

We take it that the third and fourth grounds of the motion for the dissolution of the injunction are intended to present the same objection to the jurisdiction of the equity court, viz., that the plaintiffs in the action at law had demanded punitive damages, which damages, it is now said, will not be awared by a court of equity, wherefore, relief which a court of equity would ultimately give if the defendants to the present suit were found entitled to damages, would not be as full and complete as they might recover at law. This objection is fully answered by the fact that the precise question has been distinctly decided by this court. *Whitlock* v. *Railroad*, 91 Miss. 779.

In that case fifty plaintiffs had brought suit against the railroad company in actions of tort and in each case actual and punitive damages were demanded.

Ordinarily of course, courts of equity do not entertain suits for torts. But it is the settled law of this state by this decision, that to prevent a multiplicity of suits, a court of equity will draw to its jurisdiction actions of tort brought by many plaintiffs, each seeking both actual and punitive damages.

In *Tisdale* v. *Insurance Companies,* 84 Miss. 709, one plaintiff had brought suit against three disconnected defendants on three separate policies of insurance. The

contracts were, of course, independent and unrelated. It was held in that case that these separate defendants might enjoin the prosecution of the several suits and transfer the whole cost to an equity court, the court saying: "The property insured was the same, and the principles of law governing the three cases were the same, and the facts were substantially identical."

In *Railroad* v. *Garrison,* 81 Miss. 257, actions of tort had been brought against the railroad company by seven individuals. The actions seem to have been based upon the obstruction of the valley of Bear Creek by the railroad company. Judge Whitfield, in delivering the opinion of the court, said: "In every one of these cases —past, present and future—the liability of the railroad company depends upon whether it has properly constructed its railroad. The determination of that question will settle all cases so long as the embankment remains unchanged in its condition. Here there is plainly a "common right" asserted by the railroad against all these various parties, and *Tribette* v. *Railroad* in such case, maintains the jurisdiction. Surely on these facts, the jurisdiction of the chancery court to convene all the parties in one suit, and to determine therein the single question on which liability, past, present and future depends, so as to prevent this endless multiplicity of suits with its attendant useless consumption of time and costs, is too well settled by modern authorities to be doubted."

*Shands & Montgomery* for appellee.

Equity will never enjoin on the ground of multiplicity of suits, unless it be made to appear that equity can enforce all remedies and grant all rights which could be secured, if several suits could have been prosecuted to conclusion. 16 Cyc. 61; 48 C. C. A. 517.

It is true that no plaintiff has a right to punitive damages as a matter of law; but he has a right to have a

jury say under proper instructions, whether or not they will award punitive damages in a given case, if there be any evidence of oppressive conduct. Under the facts stated in the pleadings in this case, a circuit judge would submit the case to a jury under proper instructions authorizing the infliction of punitive damages. If this is true, and the appellees are denied the right of having this question submitted to the jury, by reason of an injunction and the consequent removal of the causes to a court of equity then the relief given them by a court of equity is not as full as they could have had at law, and the record does not present a proper case for interposition on the ground of multiplicity of suits. In no state of case are punitive damages recoverable in a court of equity. *Freeman's Note,* 28 A. S. R. 874, past paragraph; *Bird* v. *Railroad,* 64 Am. Dec. last paragraph opinion of court, page 746; *Sanders* v. *Anderson,* 10 Rich. Eq. (South Car.) 232; *Livingston* v. *Wordworth,* 14 U. S. (Law Ed.) 809.

The Mississippi court has followed this doctrine, even as to the jurisdiction of a court of equity to collect a penalty. *Railroad Commission* v. *Railroad,* 78 Miss. 750.

Appellant in its brief says this question was directly presented in the Whitlock case, reported in 91 Miss. 779. But we respectfully beg leave to differ from him. In that case a bill was filed which set out a good defense to each case sought to be enjoined, and showed that if the allegations of that bill were taken as true, that there was no right in plaintiffs to recover punitive damages. There was no answer filed in that case as in this, but a demurrer was interposed to the bill, which admitted the truth of every allegation of complainant's bill, among others admitting the allegation that complainant had a perfect defense to all the actions at law sought to be enjoined. The court could have rendered no other decision than it did render in the Whitlock case, as defend-

ant's demurrer admitted the truth of every allegation necessary to give a court of equity jurisdiction in a case of this character. But the court will notice that the power of a court of' equity to inflict punitive damages was not raised in any of the briefs nor assignment of errors, nor was it adverted to by the court in its opinion. It was not an issue in that case.

Argued orally by *Tim E. Cooper* for appellant and *A. W. Shands* for appellee.

McLean, J., delivered the opinion of the court.

J. F. Williamson and three other parties each brought separate and independent suits against the Cumberland Telephone & Telegraph Company. These were actions of tort, brought at law, for the recovery of damages, both actual and punitive. Each declaration alleged that the plaintiff therein was a subscriber to a local telephone company, doing business in Sardis, Panola county, known as the "Rural Telephone Company;" that the Cumberland Telephone Company purchased the plant of the Rural Telephone Company, and that then the Rural Company went into liquidation, and that subsequently the Cumberland Telephone Company continued to serve the plaintiff as before; that later it willfully, wantonly, oppressively, and in reckless disregard of the plaintiff's rights, removed the telephone from the residence of the plaintiff, disconnected the plaintiff with the Sardis exchange, and has since refused to give the plaintiff telephone service. The Cumberland Telephone Company filed its bill of complaint in the chancery court of Panola county, praying for an injunction against the suits at law, on the ground that there was a community of interest in the principles of law and fact involved in the controversy, and that equity would take jurisdiction in order to prevent a multiplicity of suits. The injunction was granted, and thereafter, upon motion, the injunction was dissolved, and at

a subsequent term of the chancery court the bill was dismissed. From a dismissal of the bill, this appeal is prosecuted.

Within comparatively recent years there have grown up in this country what may be termed two schools upon the subject of the jurisdiction of equity relative to a multiplicity of suits. One may be termed the "school of Pomeroy," and, with great deference to Prof. Pomeroy and his disciples, it may be said that this school in many instances, while disclaiming, yet has confounded and confused the doctrine of a "multitude" with a "multiplicity" of suits. They have ignored entirely the fundamental principle that, in order for a court of equity to acquire jurisdiction in such cases, there must be something more than a community of interest in the questions of law and fact involved in the judicial controversy. The question has been so fully and ably discussed by the respective adherents that nothing new upon the subject can be added, and we will content ourselves by simply referring to a few of the many leading decisions upon this question.

The leading case in America combating what may be termed the heresy of Prof. Pomeroy, is *Tribette* v. *Railroad,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, wherein Chief Justice Campbell enters fully into the subject, and demonstrates conclusively the unsoundness of Prof. Pomeroy's doctrine— not only by showing that the authorities relied upon by Prof. Pomeroy do not support and sustain him, but that this author's reasoning is totally unsound. We have taken the pains to examine all of the cases relied upon by that author and cited in the second edition of his most valuable and excellent treatise, and we unhesitatingly concur with Judge Campbell, as stated in the *Tribette case, supra,* that "every case he cited to support his text will be found to be either where each party might have resorted to chancery or be proceeded against

in that forum, or to rest on some recognized ground of equitable interference other than to avoid a multiplicity of suits." In notes to *Southern Steel Co.* v. *Hopkins,* reported in 20 L. R. A. (N. S.) 850, the annotator, referring to Pomeroy's statement, says that "a search fails to reveal any case which on the facts sustains the proposition, if applied to actions for breach of contract or the commission of a tort, and Pomeroy cites no such case." While Prof. Pomeroy is not the originator of the doctrine of a multiplicity of suits, he is certainly the expounder and expander of this doctrine, and has certainly carried this most desirable and salutary principle beyond the limits and scope of the judges who first conceived the idea.

The opinion in *Tribette's case, supra,* has received the unqualified approval of the leading text-writers, among them being High on Injunctions, Beach on Injunctions, and Bliss on Code Pleading, and of many courts of last resort, and it may justly be regarded as the leading case upon the subject, and is in accord with the weight of judicial authority, both ancient and modern. Owing to the great reputation of Prof. Pomeroy, and the profound impression which his work on Equity Jurisprudence produced upon the judiciary and the legal profession generally, it seemed at one time as if the doctrine which he advocates so ably and forcefully would be generally accepted; but the second sober thought of the profession was arrested by the masterful and unanswerable opinion of Chief Justice Campbell in the *Tribette case, supra,* and, from the present trend of judicial thought, the judicial compass once more points in the right direction. In fact, in the third edition of Pomeroy's Equity there are added two new sections, 251½ and 251¾, wherein there is quite a recession from the unqualified statements made in the former editions. A full discussion of this question may be found in the valuable notes in the following authorities: 14 L. R. A.

(N. S.) 239; 28 L. R. A. (N. S.) 743; 32 L. R. A. (N. S.) 940; 34 L. R. A. (N. S.) 897. An examination of these notes will disclose that the cases which Mr. Pomeroy relied upon as supporting his text do not justify such a conclusion.

It is certainly a very difficult question to decide when equity will enjoin actions at law, in order to prevent a multiplicity of suits. The rule seems to be well settled in the federal courts that there is no hard and fast rule upon the subject. *Hale* v. *Allinson,* 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and authorities cited. And it is settled beyond all controversy by these authorities that ''the single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not enough in all cases to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended by more and deeper inconvenience to the defendant than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the convenience might constitute good ground for denying jurisdiction.'' The origin of the doctrine of a multiplicity of suits can be traced to what are called ''bills of peace,'' and those in the nature of bills of peace. Bishpam's Principles of Equity (7th Ed.), page 573; Kerr on Injunctions, 586; Adams' Equity, 199; Pomeroy's Equity Jurisprudence, sec. 246; Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532. To enter into a discussion of these bills of peace would simply be a rehearsal of what can be learned from any treatise on the subject of Equity Jurisprudence, and hence we refrain from doing so.

Our conclusion is that, in order for equity to take jurisdiction upon the ground of a multiplicity of suits, there must be some recognized ground of equitable interference, or some community of interest in the sub-

ject-matter, or a common right or title involved, to warrant the joinder of all in one suit, or there must be some common purpose in pursuit of a common adversary, where each may resort to equity in order to be joined in one suit. What is and what is not a community of inter-est is well settled in *Tribette* v. *Railroad, supra,* quoting, from Bliss on Code Pleading as follows: "Two or more owners of mills propelled by water are interested in preventing an obstruction above that shall interfere with the downflow of water, and may unite to restrain or abate it; but they cannot unite in an action for damages, for as to the injury suffered there is no community of interest." In *Madison* v. *Ducktown Iron Co.,* 113 Tenn. 331, 83 S. W. 658, it is said that, where several persons acting independently combine to produce a nuisance, such persons may be joined as defendants in a suit for injunction. 14 Ency. Pl. & Pr. 1141; *Woodyear* v. *Schaefer,* 57 Md. 1, 40 Am. Rep. 419; *People* v. *Gold Run Mining Co.,* 66 Cal. 138, 4 Pac. 1152, 66 Am. Rep. 80; *Kingsbury* v. *Flowers,* 65 Ala. 479, 39 Am. Rep. 14. But there can be a joinder neither of complainants nor defendants for the purpose of recovering damages for the injuries by the nuisance. *Saddler* v. *Great Western Railroad Co.,* 2 Q. B. 688, and Adams' Equity, 199. In 2 Story's Equity Jursiprudence, 855 *et seq.,* it is said that this right must be a common right, enjoyed in common by several persons, and in such a manner that the invasion of the right of one is really an invasion of the rights of all, such as a right of fishery. See *Vandalia Co.* v. *Lawson,* 43 Ind. App. 226, 87 N. E. 47, for a full discussion, in which it is said: "Such strict community of interest in the subject-matter in these cases (referring to instances where the injury is a continuing one) is not required, and they must be taken as stating a qualification to the general rule that a community of interest in the subject-matter is necessary or harmonized therewith by considering that the continuing nature

of the injury as against them all constitutes such community of interest.''

Where there is an injury continuing in its nature, which results in the bringing of numerous actions against a person, equity has intervened to prevent a multiplicity of suits. This is illustrated by the opinion of this court in *Illinois Central Railroad Co.* v. *Garrison,* 81 Miss. 257, 32 South. 996, 95 Am. St. Rep. 469, which is expressly distinguished from the principle laid down in *Tribette* v. *Illinois Central Railroad Co., supra*—the distinguishing difference being the continuing nature of the injury, and the principle announced in Tribette's case was expressly recognized. This distinction was also clearly drawn by this court in *Mills* v. *New Orleans Seed Co.,* 65 Miss. 391, 4 South. 298, 7 Am. St. Rep. 671, wherein the court says: ''Where trespass to property is the single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. But if the trespass is continuous in its nature, and repeated acts of trespass are done or threatened, although each of such acts taken by itself may not be destructive or inflict irreparable injury, and the legal remedy therefor be adequate for each single act if it stood alone, the entire wrong may be prevented or stopped by injunction.'' In *Ducktown Sulphur Co.* v. *Fain,* 109 Tenn. 56, 70 S. W. 813, the Tribette case was considered by that court and approved; and the Tennessee court held that a court of equity should not take jurisdiction to restrain actions at law by different property owners for damages for a nuisance, and dispose of the matters involved in such suits in a single action on the ground of preventing a multiplicity of suits. In *Boise Artesian Co.* v. *Boise City,* 213 U. S. 276, 29 Sup. Ct. 426, 53 L. Ed. 796, it is said: ''A court of equity ought not to interfere upon the ground of a multiplicity of suits by the same person against the complainant arising out of the

same facts and legal principles, unless it is clearly necessary to protect the complainant against *continued* and vexatious litigation." See, also, *Boston & M. R. R.* v. *Sullivan,* 177 Mass. 230, 58 N. E. 689, 83 Am. St. Rep. 275.

One of the most illuminating decisions upon this question rendered in recent times is *Turner* v. *Mobile,* 135 Ala. 73, 33 South. 132. After giving to this question a searching and exhaustive investigation, Chief Justice McClellan says: "It would seem to be an elementary and fundamental proposition that a party who seeks to come into equity must himself have an equity. His equity may be derivative. It may rest in him because of privity between him and others by force of contract or in estate; but, however it comes to him, it must exist in him, or he cannot maintain a bill. Where his title is legal, where his defense is at law, where all his rights, remedies, and defenses are answerable in a legal forum, and he therefore has in his own capacity and right no standing in a court of chancery, it is altogether plain and clear to us, Mr. Pomeroy and some courts to the contrary notwithstanding, that the wholly fortuitous, accidental, and collateral fact that numerous persons have like, but entirely independent and disconnected, legal rights or defenses, cannot, upon any conceivable principle, invest him with any right, legal or equitable, and that his rights, whatever they may be, are precisely the same as if no other person had similar rights. It is palpably illogical to say that one man may acquire rights of any sort from others with whom he has absolutely no connection or relationship by blood, in estate, or by convention. It is a palpable *non sequitur* to say that, when numerous persons have like, but independent, legal estates or legal rights, in respect of which severally they have no right to invoke the jurisdiction of chancery, yet, because they are numerous, the separate legal right of each is metamorphosed into an equity right in

all, or in one for all. Jurisdiction in equity is not enter-
tained on any notion that the court has an equity— that
it will take jurisdiction to prevent a multiplicity of suits,
in order to lessen its own labors or those of other courts.
The equity upon which the invocation is made must re-
side in the party making it. When numerous parties
have each the same equity, they may in a proper case
unite in one bill for its declaration and effectuation.
Each having the separate right to come into equity upon
an identical ground, they will be allowed to come in to-
gether, on the theory of preventing a multiplicity of
suits.'' It is true that this case was subsequently over-
ruled by the same court in *Southern Steel Co.* v. *Hop-
kins,* 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.)
843, 131 Am. St. Rep. 20; but it must be conceded that
the court in the later case signally failed to refute the
unanswerable argument made by the court in *Turner*
v. *Mobile, supra.* Another recent and unusually well
considered case is *Vandalia Coal Co.* v. *Lawson,* 43 Ind.
App. 226, 87 N. E. 47, *et seq.* wherein this question is
taken up and discussed in its various phases, and the
principle in the Tribette case affirmed. We feel that
we can add nothing to what has been said in the cases
hereinbefore referred to.

The case of *Crawford* v. *M., J. & K. C. R. Co.,* 83
Miss. 708, 36 South. 82, 102 Am. St. Rep. 476, is not at all
inconsistent either with the Tribette case, *supra,* or with
the opinion which we herein announce. In that case
fifty-seven different persons joined in executing notes
for the amount of thirty-five thousand dollars. The exe-
cution of the notes grew out of the same transaction,
but their validity depended upon the same identical prin-
ciples of law, and the bill specifically charged that those
notes were procured through fraud, and prayed that the
notes be surrendered and canceled. The allegation that
the notes were procured through fraud, and the prayer
for surrender and cancellation thereof, gave the court

of equity jurisdiction. The same may be said of *Pollock v. Okolona Savings Institution,* 61 Miss. 293. It is true that the court in that case seemed to rest its decision upon the authority of Mr. Pomeroy, yet the real ground upon which the court of equity assumed jurisdiction was that that was a case peculiarly of equity jurisdiction, independently of the question of a multiplicity of suits. Murdock & Parchman, a mercantile firm, becoming insolvent, executed a deed of general assignment, wherein they transferred to the assignee all of their property, real and personal, with directions to sell the same and with the proceeds to pay off their debts, making some of their creditors preferred and others unpreferred. Several of the unpreferred creditors sued out attachments at law against the assignors, upon the ground that the deed of assignment was fraudulent, and had the same levied on the goods in the hands of the assignee, and had writs of garnishment served for the Okolona Company and upon Black, the assignee. The Savings Bank of Mobile, which was one of the creditors, in addition to suing out its attachment and garnishment writs, also filed a bill in the chancery court attacking the deed of assignment as fraudulent in law upon its face. The Okolona Savings Bank, the garnishee in all these attachment proceedings and the defendant in the chancery suit brought by the Mobile Bank, under these circumstances filed a bill in chancery, the object of which was to enjoin the further prosecution of the attachments at law, the adjudication of the rights of all the parties by one decree, and the establishment of its own right to set off against the deposit standing on its books to the credit of Black, assignee, its own debt against Murdock & Parchman, the assignors, which exceeded in amount the sum of the deposit. This is a statement of the case as found in the opinion of the court. It is clear and manifest from this statement that a court of equity had jurisdiction of these matters, independently of any question of a multiplicity of suits.

The erroneous doctrine of Prof. Pomeroy finds its apothesis in *Whitlock* v. *Railroad,* 91 Miss. 779, 45 South. 861. In that case the court says: "It is clearly and thoroughly settled by the best-considered modern decisions in this state and elsewhere that such jurisdiction extends in all cases of this character, referring alone to the following: *Railroad* v. *Garrison,* 81 Miss. 264, 32 South. 996, 95 Am. St. Rep. 469; *Crawford* v. *M., J. & K. C. R. R.,* 83 Miss. 708, 36 South. 82, 102 Am. St. Rep. 476; *Pollock* v. *Okolona Savings Bank,* 61 Miss. 293." We have heretofore shown in this opinion that neither of these cases referred to in the Whitlock case is an authority for the principle so announced. The facts in the Whitlock case were these: Some fifty-odd persons each brought separate and distinct suits for damages against a railroad company. These were actions of tort, wherein both actual and punitive damages were claimed. The railroad company filed its bill of injunction, praying the chancery court to take jurisdiction upon the ground that the same principles of law and the same state of facts existed in each case, and the court sustained the bill in order to prevent a multiplicity of suits. After a careful and exhaustive research we have found but one case like it, and that is the case of *Southern Steel Co.* v. *Hopkins,* 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20. In both of these cases the court entirely ignored the rights of each of these plaintiffs in the suits at law to have his suit determined upon its own merits, free and untrammeled, and independent of the suits of the other plaintiffs. The damages of each of the plaintiffs were necessarily different, and each plaintiff was necessarily compelled to establish his damage by altogether different testimony. In the chancery court, therefore, there was one suit, with a multitude of issues, these issues being separate and distinct, so far as the damages of the several plaintiffs at law were concerned, and a court of chan-

cery is not the forum in which such damages should be ascertained. As is said in *Tribette* v. *Railroad, supra*: ''The recovery of damages for a tort or breach of contract does not pertain to courts of chancery, which decree damages only in a very limited class of cases and under peculiar circumstances, or as an incident to some other relief.'' 1 Pomeroy's Equity Jurisprudence, sec. 112; Story's Equity, sec. 790. The machinery of a court of equity is totally inadequate in such cases to further the ends of justice. The giving to chancery courts of the power to enjoin actions at law upon the sole ground of preventing a multiplicity of suits has opened up a perfect Pandora's box, and the practice has become quite common in this state that when one person is sued by two or more persons in actions of tort, where there is merely a community of interest in the questions of law and fact involved, and where there is no common title, and no community of interest or of right in the subject-matter, for the court of chancery to acquire jurisdiction. The evils resulting from this practice are too numerous to mention.

The usurpation upon the part of the chancery court is too flagrant for further discussion.

Since the preparation of the foregoing opinion, we have read with profit the recent opinion of the supreme court of Alabama in *Southern Steel Co.* v. *Hopkins,* 57 South. 11, wherein the Alabama court reconsiders its former opinion in this case as found reported in 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, and overrules the former opinion, and re-establishes in Alabama the doctrine announced in *Turner* v. *Mobile,* 135 Ala. 73, 33 South. 132. This recent opinion of the Alabama court is not only an exceedingly able one, and a valuable contribution to this subject, but it squarely affirms the rulings of this court in *Tribette* v. *Railroad, supra,* and we quote from that opinion the following: ''We base our conclusion chiefly

upon the Tribette case, which we concede to be the leading authority in the world upon the question of the jurisdiction of equity to prevent a multiplicity of suits. It has been reprinted time and again, and copied into the latest editions of most of the text-books upon the subject as stating the true doctrine."      *Affirmed.*

*Suggestion of error filed and overruled.*