Gulf & Ship Island Railroad Company *v.* J. R. Walker
*et al.*

[60 South. 1014.]

Injunction. *Multiplicity of suits. Consolidation of suits.*

. Where the head of a family sued a railroad company for damages caused by the burying of a horse on the right of way so near his house that his well water was polluted, his family made sick and his place made worthless as a home and at the same time his daughters brought suit for being made sick from the same cause, and his wife also brought suit for the death of another daughter from the same cause; there was no such community of interest in the several plaintiffs as would warrant the exercise of equitable jurisdiction by ignoring the suits and compelling a consolidation and a trial in chancery.

Appeal from the chancery court of Simpson county.
Hon. R. E. Sheehy, Chancellor.

Bill by the Gulf & Ship Island Railroad Company to restrain J. R. Walker and others from prosecuting certain suits and to have them consolidated. From a decree sustaining a demurrer to the bill, complainants appeal.

This suit was begun by a bill for injunction to enjoin the prosecution of three actions at law and have them consolidated and tried as one suit in the chancery court. On the —— day of August, 1911, J. R. Walker filed suit in the circuit court against the defendant railroad company for damages, alleging that the burial of a dead horse on the railroad right of way near plaintiff's residence had so damaged his property that he had to abandon it because of the noxious odors, swarms of flies, and pollution of his well water, thus rendering his property worthless as a home and bringing sickness to his family. On the same day, his daughter Maude, by her mother and next friend, brought suit in the circuit court for dam-

ages for illness caused to her by the pollution of the well
water. A third suit was brought by Mrs. Walker, under
section 721 of the Code, to recover damages for the death
of another daughter, claimed to be due to defendant's
wrongful act in polluting and poisoning the water of the
well which had been drunk by the daughter. In Septem-
ber following, the railroad company filed its bill in chan-
cery invoking the equitable jurisdiction of that court to
prevent a multiplicity of suits, making all three plain-
tiffs in the actions at law defendants in the injunction
suit. These defendants demurred and moved to dissolve
the temporary injunction granted. At the hearing, the
demurrer was sustained and the injunction dissolved and
bill dismissed, and the railroad company appeals.

*B. E. Eaton* and *May & Saunders*, attorneys for ap-
pellant.

On the first day of September, 1911, the Gulf & Ship
Island Railroad Company filed its bill in the chancery
court of Simpson county, invoking the exercise of the
equitable jurisdiction of the chancery court to prevent
a multiplicity of suits and procure an injunction restrain-
ing the further prosecution of said suits at law; all of
the above named plaintiffs in said suits at law being made
parties to the bill and being likewise restrained from
further prosecuting the said suits at law. The defend-
ants in said suit filed a demurrer to said bill and inter-
posed a motion to dissolve the injunction. At the hear-
ing of said demurrer and motion to dissolve, the de-
murrer was sustained, the injunction dissolved, the bill
dismissed and an appeal to ths court allowed.

The court will note the general issue defense set out in
the bill of complaint. The Mississippi cases have set-
tled the principle here invoked: *Nevitt* v. *Gillespie,* 1
How. (Miss.) 108, 26 Am. Dec. 696; *Tate County* v. *De-
Sota County,* 51 Miss. 588; *Pollock* v. *Okolona Savings*
*Institution,* 61 Miss. 293; *Railroad* v. *Garrison,* 81 Miss.

256, 32 So. 996; *Crawford* v. *Railroad Co.*, 83 Miss. 708, 36 So. 82, 102 Am. St. Rep. 476; *Tusdale* v. *Fire Ins. Co.*, 84 Miss. 709, 36 So. 568; *Blumer* v. *Ulmer*, 44 So. (Miss.) 161; *Whitlock* v. *Railroad*, 91 Miss. 779, 45 So. 861; *Railroad Co.* v. *Barnes*, 94 Miss. 484, 48 So. 823.

As clear a statement of the rule as we have noted is to be found in the case of *Railroad Co.* v. *Garrison, supra,* which was a suit by several plaintiffs seeking to recover for alleged improper construction of a railway embankment. The court, at page 264, 81 Miss., uses this language: "In every one of these cases past, present, and future, the liability of the railroad company depends upon whether it has properly constructed its railroad track." So, in the case at bar in every one of these actions at law the liability of the railroad company depends upon whether its section foreman negligently buried a dead horse in dangerous proximity to plaintiff's well. This is the only question involved in determining whether the equity jurisdiction exists. The nature and extent of ailments and injuries of the several plaintiffs, if any, growing out of the use of the polluted water only go to the measure of damages in each separate case. Of course, we concede that the burden will rest upon each separate plaintiff to show that the alleged negligent act of the section foreman proximately caused such plaintiff to sustain some injury or damage, and if any such plaintiff should fail to meet this burden, the cause will fail. But this is true in every similar situation. If any one of the adjacent land proprietors, in the *Garrison case, supra,* was unable to show that he had been damaged by the improperly constructed embankment, then the court would have denied him recovery; but not so with others whose lands were damaged. There is but one tortious act complained of; there is but one fact essential to establish the railroad company's liability to all persons involved. If the section foreman negligently buried the animal in dangerous proximity to plaintiff's well when it

was reasonably probable that the members of plaintiff's family would be injured, then the company is responsible to all such who were without fault.

It was argued in the court below that because it might be possible for one suit to succeed and another to fail, that the same legal questions and substantially the same facts are not involved, this being the true test to determine whether separate prosecution of suits will be restrained, counsel depending upon the case of *Railroad Company* v. *Barnes, supra.* We do not so understand the Barnes case. That case was decided upon the ground that there were varying causes of liability on the part of the two defendants. In other words, what would be a good defense in one action would not be a good defense in another, and facts that would give rise to a cause of action for one would not support a claim for another. In one case negligence of the engineer in charge of the Gulf & Ship Island Railroad Company's switch engine, if established, would sustain the suit; in another, it would not. In another case the negligence of the engineer in charge of the locomotive drawing the passenger train of the M., J. & K. C. Railroad Company, if established, would sustain the action, and in another it would not. And so with reference to the negligence of the towerman operating the interlocking device, and also the negligence of one railroad company in spiking down derail switch. No such questions are here presented. There are no two joint tort-feasors; there are no numerous alleged acts or omissions by different servants of different defendants constituting the negligence relied upon in any of the several suits, but it is one act of a single servant of a single defendant that is complained of. That act gives rise to liability or it does not. The only remaining question after the alleged negligent act is established, is for the several plaintiffs to show injury or damage to each respectively.

The law of the company's liability is necessary the same in all three suits because there is but one alleged

tortious act which forms the basis of the suits, just as was true in the *Whitlock case, supra,* where a number of passengers sued to cover for negligent delay of the train on which they were traveling. There was but one fact in that case to establish the company's liability— that is, whether or not the train was negligently delayed; that issue being settled in the affirmative, the company's liability attached, otherwise, there was no liability. So here, if the railroad company negligently buried the animal in dangerous proximity to plaintiff's well, the liability of the company attaches, otherwise there is no liability. All other questions of fact which may be brought into the case will necessarily go to show whether or not the negligence of the railroad company caused any of the several plaintiffs to suffer injury or damage. But these facts are brought into the case after the principle of liability has been settled. Of course, acts of negligence which are not the proximate cause of injury cannot be made the basis of a suit, and if some of the plaintiffs did not sustain injury or damage their suits must fail but not because of any different legal principle or different state of facts. When the court says that the cases must depend upon a common state of facts and upon a common principle, it means the facts relied upon to establish liability and the principle which imposes liability.

We respectfully assert there is no reasonable ground for difference of opinion upon the proposition that the principle of liability in these cases is identical in so far as the negligence of the railroad company is concerned, and the negligence of the railroad company is the gist of the action—the negligent act of the section foreman. This one act supports as many actions as may result proximately from it. Then the principle of law involved in the several suits must be referred to this one act, and and must, therefore, be necessarily the same in all cases. The court will not go beyond the facts essential to es-

tablish the liability of the railroad company in determining whether equity jurisdiction exists. It will not inquire into the question as to whether the plaintiffs sustained damages as a result of the negligent act, until a trial upon the merits of the case is entered into.

*Hilton & Hilton,* attorneys for the appellee.

We feel that we could cite the case of *Cumberland Telephone & Telegraph Company* v. *Williamson,* 57 So. 559, and rest our case there, and be sure of an affirmance. But it may be insisted by the appellant that the Cumberland Telephone & Telegraph Company case does not apply in the consideration of this case, for the reason that our supreme court had announced a different doctrine as being the law in this state, when they filed suit, and the law as it stood at the time of the filing of their bill should be the law that will govern in the consideration of this case.

There are two answers to that proposition: 1st. Under the law as it stood the injunction should have been dismissed, even construing the law most favorably to the appellant. 2d. There is no vested or property right in the appellant in what the law was, as to rights to enjoin.

We will discuss answer number one first by referring to *nevitt* v. *Gillespie,* 1 How. (Miss.) 108; *Tate County* v. *Desoto County,* 51 Miss. 588; *Pollock* v. *Akola Savings Institute,* 61 Miss. 293; *Railroad* v. *Garrison,* 81 Miss. 256; *Crawford* v. *Railroad Co.,* 83 Miss. 708; *Tisdale* v. *Fire Insurance Co.,* 84 Miss. 709; *Bloomer* v. *Ulmer,* 44 So. 161; *Whitlock* v. *Railroad Co.,* 91 Miss. 779; *Railroad Co.* v. *Barnes,* 91 Miss. 484.

We will find the law in this state on which the appellant relies to sustain its bill. If we should care to go out of this state for authorities on which they rely, we might refer the case of the *So. Steel Company* v. *Hopkins,* 157 Ala. 175, 47 So. 274, 20 L. R. A. (N. W.) 848. This case, however, is overruled in 57 So. 11.

The law is, under the principle announced in this line
of decisions, that where the same principle of law and
the same state of facts govern a number of cases that the
chancery court may enjoin to prevent a multiplicity of
suits. These cases all embrace this idea of the law, and
some of them specifically announce that the same state of
facts, and the same principles of law must govern, in
order to give the chancery court jurisdiction by injunc-
tions.

In this case we say: 1st. That the same statement of
facts does not and connot govern the right to recover by
all of these complainants. J. R. Walker's declaration
says, that he was greatly annoyed and compelled to move
from the premises on the account of the burial of the
horse. Under J. R. Walker's declaration he could re-
cover by merely showing that the railroad company bur-
ied the horse complained of at the place complained of;
that the burial was done over his protest; that the dead
carcass buried near his house greatly annoyed him by
the smell and odor arising therefrom, or by the great
swarm of flies which it brought to his premises, or by
the number of buzzards that it attracted to his premises.
The testimony need not show that his water in his well
was polluted. The other two suits are based on the idea
that the water was polluted. It takes additional facts,
and the additional facts must appear that the water in
the well was polluted and that the polluted water pro-
duced toxihemia in the two girls, before any recovery
can be had, in the other two suits.

Counsel for appellant, ingenuously argued that all the
suits are based upon the negligent burial of the horse.
But this position is untenable in the light of the declara-
tion. The facts cannot be said to be the same, when it
requires more facts or certain facts to substantiate two
of the suits, which do not enter into the other suit, and
are not necessary to a recovery in the other suit. What
if the testimony failed to show in Walker's suit that the

water in the well was polluted at all? He would not be barred from recovery. But what if the testimony failed to show that the water was polluted at all in the other two suits; both of them would necessarily fail. It is true that the pollution of the water which poisoned the two girls, and on which these suits are based, grew out of the tortious burying of the horse. But the cornerstone of these two suits rests on the pollution of the water, and those two plaintiffs becoming poisoned thereby, and not on the mere burial of the horse.

The distinction between the case at bar and the Whitlock case, which is the strongest case in existence for the appellant, is this: The same fact would be a defense to each suit in the Whitlock case. The same facts would fasten liability on the railroad company in each suit in the Whitlock case. But the amount of damages that may be recovered does not enter into the question as to whether the same facts existed that make the defendant liable. For instance, one of the negroes in the Whitlock case might have been bitten by a mosquito; another one might have gotten wet in the rain and suffered no inconvenience; another one might have gotten wet and suffered from lagrippe; another one might have gotten wet whereby he contracted pneumonia and died. Their damages would have been different in amount, but the facts that made the railroad company liable would have been the same in each and every case, to-wit: That the railroad company carried them out to a picnic ground and negligently failed to run its train back in time to carry them home. We do not know what the defense of the railroad company was, but let us assume that their defense was that the engine which was pulling the train had been duly and properly inspected and started out with the train and broke down a mile from a telegraph station, and that there was no apparent defects in the engine when it was started out with the train. Or let us assume that their defense was that a trestle

had burned out, or that the track had washed away. This
same defense would have availed them in each and every
suit. So we see that the same state of facts and the
same law would govern each and every suit, so far as
the right to recover is concerned in the Whitlock case.
But in this case, the same state of facts does not exist,
because J. R. Walker can recover on a state of facts
that will not give the plaintiffs in the other two suits
a right to recover.

2nd. We say further that the same law does not gov-
ner the case at bar, J. R. Walker's suit is a common law
action; M. A. Walker's suit for the death of her daugh-
ter, is a statutory action; J. R. Walker's suit is for dam-
ages to him and his property. The other suits are for
personal injuries straight out.

*Flowers, Alexander & Whitfield,* attorneys for appel-
lees.

This is an appeal from the decision of the chancellor
sustaining a demurrer and dissolving the injunction.
The bill was filed to enjoin the prosecution of three ac-
tions at law and to have them consolidated and tried as
one suit in the chancery court. The bill was filed and
the injunction sued out prior to the decision of this court
in *Cumberland Telephone & Telegraph Company* v. *Wil-
liams et al.,* 57 So. 559, decided February 26, 1912. The
injunction in these cases issued August 26, 1911.

We think the position taken by our associates that
even under the law of the Whitlock case this injunc-
tion could not have been maintained is sound. Under
that extreme case several actions based upon the same
statute and depending upon the same facts might be thus
consolidated in the chancery court; and several actions
depending upon the same common law rules and based
upon the same facts might be so consolidated. But here
there is a suit by J. R. Walker for the damage done to
his property. He was so damaged in his property that

it was necessary to leave it.   The noxious stenches; the swarm of flies; the destruction of the well of water; these conditions created by the act of the defendant made the said plaintiff's property worthless as a home.   It brought sickness into his family.   He could recover for that and for the other damage to his property all in one action.

Mrs. Walker, the wife of J. R. Walker, filed her suit as next friend for her minor daughter, Miss Maude, to recover damages for the illness caused to the said daughter by the pollution of the water of the well.   This is a common law action.

The third suit was brought by Mrs. Walker under the statute, section 721 of the Code, to recover damages for the death of another daughter, claiming that the death was caused by the wrongful act of the defendant in poisoning the water in the said well.   This depends solely upon the statute; the other cases depended upon common law rules.   The several cases do not depend upon the same law.   The action for the death could not be brought at common law.   In the absence of a statute authorizing it, it could not be brought.   This alone should dispose of this appeal.   And we think it would have disposed of it even if the *Williamson case, supra,* had not been decided as it was.

But we think it unnecessary to enter into conjecture as to what the result would have been in this controversy if the cases which attacked and at last overthrew the doctrine of the Tribette case had continued in authority. Mr. Justice McLean wrote the opinion which overruled the Whitlock opinion written by Chief Justice Whitfield and which in its turn overruled the opinion of Chief Justice Campbell in the Tribette case.   Each of these case has had its day; each of these judges had his day; Mr. Justice McLean has had the last say and hence his is the law.

It is settled in the Williamson case, possibly for a long time, that a bill in chancery cannot be maintained to en-

join the prosecution of several actions at law to which there is nothing common except the law and the facts. It is decided finally (for the present at least) that there must be something more than common principles of law and common issues of facts to warrant the chancery jurisdiction. At this time this is settled law. And we expect that it will remain so settled since it has been so thoroughly considered and written out.

It does not help the case of this appellant that the injunction issued before the Williamson case was decided. In theory the law has always been as declared by Mr. Justice McLEAN in that case. It has been that way from the foundation of the world. It was never any different. It is true there were decisions in the books to the contrary at the time this injunction issued and at the time it was dissolved. But these decisions were unsound. And perhaps they were misleading. But it was not safe to follow them or to attempt to follow them.

In the case of *Sessums* v. *Newton Oil & Manufacturing Company*, filed in the chancery court of Newton county, the lower court undertook to follow the decisions in the Whitlock case and its supporters. And the decision of the chancellor was rendered before the Williamson case was decided. Yet this court held that it must be controlled by the decisions of this court as they stood at the time the case came up for consideration here. See *Newton Oil & Manufacturing Co.* v. *Sessums et al.*, 59 So. 9.

In the Sessums case there was presented a perfect situation for the application of the rule declared in the Whitlock case. Numerous persons bought the same fertilizer which was defective in the same particulars and for which they paid the same price and made the same contracts. The law depended upon was exactly the same and the facts were the same. These numerous persons brought in the chancery court their one suit against their common adversary. The demurrer to the bill was over-

ruled before the decision in the Williamson case and the cause came on to this court and was decided here after the decision in the Williamson case. But this court promptly held that the questions involved were settled by the opinion in the Williamson case.

It makes no difference whether the many or the one invoke the chancery jurisdiction to prevent multiplicity of suits. The proposition is the same. In the case at bar one has proceeded against many; the reverse is true of the Sessums case. The suits enjoined are all actions in tort.

As above suggested we think the action of the court below was correct without regard to the reinstatement of the doctrine of the Tribette case. In the present state of our decisions upon the subject there can be no question as to the correctness of the chancellor's decision. There can be no contention made that there is anything common to this case except the questions of law and the questions of fact. And it has been finally decided that something more is necessary to give the chancery court jurisdiction of several claims or suits in order to prevent multiplicity of actions.

COOK, J., delivered the opinion of the court.

In *Telephone & Telegraph Co.* v. *Williamson et al.*, 57 South. 559, Judge McLEAN, in an able and exhaustive opinion, reviewed and analyzed all of the authorities "upon the subject of the jurisdiction of equity relative to a multiplicity of suits." The reasoning of this opinion is flawless, and the law of this state upon this much discussed subject was announced to be as it was announced by Judge CAMPBELL in *Tribette* v. *Railroad Co.*, 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642. It was said by Judge McLEAN in *Telephone Co.* v. *Williamson, supra*: "What is and what is not a community of interest is well settled in *Tribette* v. *Railroad Co.*, quoting from Bliss on Code Pleading as follows: "Two or

more owners of mills propelled by water are interested in preventing an obstruction above that shall interfere with the downflow of water, and may unite to restrain or abate it; but they cannot unite in an action for damages, for as to the injury suffered there is no community of interest.' '' This terse sentence embraces a clear and comprehensive definition of the rule under review, and was followed by this court in *Newton Oil Co.* v. *Sessums*, 59 South. 9, wherein the parties to the proceedings were reversed.

We regard the law as finally and correctly settled against the appellant.

*Affirmed.*