## J. M. CADY ET AL. *v.* ROBERT E. CADY.

67 425
69 608
69 609
67 425
70 359
67 425
81 362
81 363
67 425
e86 751

1. LEGACY CHARGED UPON LAND. *Chancery court. Jurisdiction. Remedy at law.*
   A legacy charged upon land may be enforced in the chancery court as an equitable charge, notwithstanding the statutory right to sue at law for the legacy.

2. SAME. *Lapse of devise. Effect on legacy.*
   Where lands are devised, charged with a legacy, the lapse of the devise by the death of the devisee during the lifetime of the testator, will not cause a lapse of the charge in favor of the legatee.

3. LEGACY. *Intent to charge land. Blending real and personal estate.*
   A general purpose to charge both land and personalty with the payment of the debts and legacies will be inferred from the fact that the testator blends his real and personal estate, and gives his executor power over each.

4. SAME. *Intent to charge land, how ascertained. Extrinsic circumstances.*
   The intention to charge lands with legacies must appear either by express provision or by clear implication, but this implication need not appear alone on the face of the will. In cases of doubt, attendant circumstances, such as the character, situation, and relation of the parties in interest, may be considered in the effort to ascertain the testator's intention.

5. SAME. *Relationship of legatee may be looked to. Rule illustrated.*
   Where such doubt exists upon the face of the will, and the legatee is a stranger or a child for whom other provisions are made, the intent to charge the real estate must more clearly appear than if the legatee is one having a natural claim upon the bounty of the testator, and for whom no other provision is made.

6. INTENT TO CHARGE LAND. *Case in judgment.*
   A testator, the father of three children, having adopted into his family two grandchildren of his wife, who were minors and dependent upon him, specifically devised certain land to each of his children, but directed that two of his children should bear jointly the care and expense of the education and maintenance of the grandchildren, and that the latter should each receive $500 on coming of age, to be paid by said two children. He further directed his executor to sell the residue of the estate real and personal, and, after paying debts, to pay the remainder in equal parts to his three children. *Held*, that the pecuniary legacies to the grandchildren were a charge primarily upon the lands specifically devised to the two children.

FROM the chancery court of Lowndes county.

HON. T. B. GRAHAM, Chancellor.

The opinion states the facts.

*J. E. Leigh*, for appellants.

1. The devise to Robert E. Cady lapsed by the death of Adella prior to the testator's death, and therefore the legacies in item 6 of the will lapsed. The devise to him and Julia Riddick in item 6 was a joint personal charge and not a charge upon the land specifically devised; nor was it a charge upon the residuary estate. See *Malone* v. *Manning*, 40 Miss. 247; *Evans* v. *Fisher*, Ib. 644. By accepting the devise, the devisee impliedly promises to pay the legacy charged upon it. He can be sued at law and the remedy is not in equity. Willard's Eq. Jur., § 1247, and cases cited.

The bequest was to be jointly and personally paid. By the death of Adella the devise to her lapsed, the joint condition failed, and the bequest lapsed on account of the failure of the condition. If a legacy is specific, upon the destruction of the property fund or security, the legatee will not be entitled to satisfaction out of the general assets. *Malone* v. *Manning*, *supra*; 1 Roper on Legacies, 327–328; *Dillard* v. *Connoway*, 25 Miss. 230. If the bequest directed to be personally paid is valid, it must be a charge on the property which lapsed by reason of the death of Adella Cady, and thereby became a part of the undevised estate. *Knotts* v. *Baily*, 54 Ib. 235.

2. If mistaken in above views, the complainant must seek redress out of the residuary estate. 3 Pomeroy Eq. Jur., § 1245, and cases cited; *Knotts* v. *Baily*, *supra*; *Hoyt* v. *Hoyt*, 85 N. Y. 142. And a charge on the residuary estate will not charge property specifically devised. 3 Pomeroy Eq. Jur., § 1247. The intention to charge land must appear from express provision or by clear implication. Ibid., § 1245. The land bought by Mrs. Short cannot be charged to pay legacies subject to a condition. 57 Miss. 776; 5 Md. 280; 2 Redf. Wills, 208; 3 Ib., 235; 36 Miss. 564; 32 N. J. Eq. 390.

*Wm. Baldwin* and *Geo. A. Evans*, for appellee.

The only questions presented are : (1) Does the will charge the legacies upon any of the lands of the testator; and (2) upon what lands.

1. A devise to A. with directions to pay B., is a charge upon the property devised to A., to the extent of the sum to be paid B., and the acceptance of the devise subject to such a direction makes the devisee subject to the personal charge of paying the money. If the devisee wants to escape the personal charge, he must refuse to accept the devise. 3 Pomeroy Eq. Jur., §§ 1244–1248, and notes.

2. The testator ignored the difference between his personal and real estate, and throughout the will blends them for all purposes.

3. It is manifest from the whole will that the purpose of the testator was that those whom he loved should be provided for *in all contingencies.* Every possible provision is made for their safety, and when they become of age a small sum is to be paid to each as a legacy. The will is explicit as to how much they are to get and who is to pay them. The fact that this was the only provision for them, that they were young children dependent upon the testator, should have great weight in determining that the testator intended the legacies to be paid at all events and out of the lands if the personalty should not be enough. *Hoyt* v. *Hoyt*, 85 N. Y. 148. That they were grandchildren and not children does not alter the rule. *Van Winkle* v. *Van Houton*, 2 Green's Ch. (N. J.) 187.

4. The decree properly fastened the charge upon the lands specifically devised to J. M. and Mary Adella Cady. As Mary Adella died during the testator's lifetime, her devise lapsed, but the charge on it in favor of appellee was fixed. As to the land devised to her, the other children took by inheritance as though their father was intestate. But only what was given to her was affected by her, death, not the charge on it. The only difference between this land and that devised to James M. is that he is not personally bound for the portion of the legacies required to be paid by Mary Adella, but the land devised to her remained nevertheless charged with the legacies required to be paid by her. As to this land the heirs took *cum onere.* It was proper, therefore, to make James

M. and Burton bear this burden, share and share alike. As it is, James has received all the property devised to him and has paid the debt or legacy he was to pay, which exonorates him and the property devised to him. But he also got one-half the property devised to Mary Adella, and should pay one-half of the charge on this property.

COOPER, J., delivered the opinion of the court.

This is a bill exhibited by a legatee to enforce payment of his legacy by fixing a charge upon certain real estate devised by the testator.

The testator, William Cady, at the time of his death had three living children, William, James M., and Mary Adella. Two grandchildren of his deceased wife, who were infants of tender years and orphans, were members of his family, and he stood to them *in loco parentis.*

By the first clause of his will, the testator appointed James B. Bell his executor, and trustee of that portion of his estate devised to his son William Cady.

By the second clause he gave to said Bell, trustee, a parcel of land known as the "Eclipse Stable," in trust for his son William. By the third clause he gave to his son James M. Cady a parcel of land and the improvements thereon, designated as the "Horse Mansion." By the fourth clause he gave to his daughter Mary Adella, his residence, together with its furniture, etc.; but provided that said residence should continue to be used as the home of his children and grandchildren, so long as they should remain as one family, and declared that, "the necessary supplies and provisions for the family be a charge upon the property devised in items two and three, unless my son William and his son Burton shall cease to live with the family, in which case it shall be a charge upon the property devised to my son James M. alone in item three." By the fifth clause he directed his executor, at his discretion, to sell the residue of his estate real and personal, and the money arising therefrom and from collections of debts due him, and from all other sources, was first to be applied to the payment of all debts

due by his estate, and the residue to be distributed, one-fourth to William Cady and the remaining three-fourths equally between James M. and Mary Adella.

The sixth clause of the will, which gives rise to the present litigation, is as follows : " My son James M., and my daughter Mary Adella, are to have and bear jointly, the care and expense of the education and maintenance of my grandchildren, Robert Cady and Julia Reddick. The said Robert and Julia are each to receive the sum of five hundred dollars when they become of age, to be paid jointly by the said James M. and Mary Adella Cady."

By the seventh and last clause the testator provided that, in event of the death of either of his children, the property devised to such child should be equally divided between the survivors.

Mary Adella Cady died in the life of the testator. Robert Cady and Julia Reddick were maintained and educated, as provided in the sixth clause of the will, and, upon her reaching majority, Julia was paid by James M. Cady the legacy given to her.

In January, 1885, James M. Cady executed a mortgage upon a portion of the property known as the "Horse Mansion," which has been foreclosed, and the land sold, and it is now owned by Mrs. Julia A. Short. In December of that year James M. Cady conveyed to his wife Fannie L. Cady, for life, with remainder to his daughter Annie L. Cady, in fee, the interest taken by him in the residence of the testator, which had been by will devised to Mary Adella, and which, upon her death, passed by the seventh clause of the will to the surviving children of the testator. In the year 1888 an execution issued under a judgment which had been on the — day of December, A.D. 1887, rendered against James M. Cady, and was levied on that part of the property known as the "Horse Mansion," which had not passed by the mortgage executed by the said Cady, and at the execution sale thereof Mrs. Short became the purchaser.

William Cady, the son of the testator, has died, leaving one child, Burton Cady.

Robert Cady, the legatee, having reached his majority, demanded payment of his legacy, which not being paid, he exhibited this bill

against Burton Cady, James M. Cady, Annie L. Cady and Mrs. Short for the purpose of charging the lands devised by the testator to James M. and Adella Cady, with the payment of the same.

The chancellor decreed that Burton Cady (who held the undivided one-half interest in the lands devised to Mary Adella) should pay one-half of the legacy, in default of which the lands so held by him should be sold therefor, and that the remaining half should be paid by James M. Cady, in default of which the lands specifically devised to him (the Horse Mansion), and the undivided one-half interest in the residence which had passed to him by reason of the death of Mary Adella, which property was then owned by Mrs. Short, and by Mrs. Cady and her brother, should be sold for the same.

Burton Cady has paid the portion thus directed to be paid by him ; Mrs. Fannie L. Cady has died since the rendition of the decree. James M. Cady, Annie L. Cady and Mrs. Short prosecute this appeal.

The positions taken by appellants are : First. That the legacy sued for is not by the will of William Cady charged upon any of the real estate devised by the will. If mistaken in this, then that it is a charge only upon the land not specifically devised. If mistaken in this, then that it was primarily chargeable upon the personal estate, and the realty cannot be subjected until after the personalty is exhausted. If mistaken in this, then that the charge was intended to be fixed on the land only as a joint charge against James M. and Adella Cady, and since Adella died in the lifetime of the testator, the devise to her lapsed, and so also the charge lapsed in so far as it bound the land devised to her, wherefore to enforce it against the land of James M. Cady alone would be to enforce a several charge, and not a joint one as intended by the testator. And, finally, it is said that the legatee might have sued at law for his legacy, wherefore a court of chancery has no jurisdiction.

We note the positions assumed by counsel, but consider at length only the question whether the legacy was charged upon the land devised to James M. and Mary Adella as the primary source from which payment should be made. It is too well settled to require

discussion or the citation of authorities that, if the legacy is a charge upon the land, it is an equitable charge, to enforce which a court of chancery has jurisdiction, even though the legatee may have a right to sue at law.

It is equally clear, that, if the lands devised to Mary Adella were charged in the legacy, the lapse of the devise to her by reason of her death in the lifetime of the testator, did not cause also the lapse of the charge in favor of the legatee. 1 Jarman on Wills, 627; *Hills* v. *Wirley*, 2 Atk. 605; *Wigg* v. *Wigg*, 1 Ib. 382; *Oak* v. *Heath*, 1 Vesey Sen. 135.

While the books are full of cases in which discussion is had upon the question whether pecuniary legacies are or are not chargeable upon the real estate of the testator, and there is conflict in the conclusions reached, the diversity of opinion is not greater than that which exists in other controversies where courts seek to discover the intention of a party from language he has used, by the application of arbitrary rules of construction. The sole difficulty is in discovering the intent of the testator, which, being found, is to be enforced. Ordinarily, pecuniary legacies are payable by the executor, and out of the personal estate. The claim of the heir-at-law, or of the devisee, is ordinarily as much in the mind of the testator as that of the legatee, and, unless a contrary purpose appears from the will, it will be assumed that the testator intended that legacies are to be paid only out of his personal estate, and that, upon that being insufficient, the legacies must abate in whole or in part. But the single inquiry always involved is, what was the intent of the testator? This being discovered, must be effectuated by the courts. Where the testator, for the purpose of paying his debts or legacies, blends his real and personal estate, giving to his executor equal power over each, and thus obliterates the distinction which the law makes between the real and personal estate, the courts accept this as indicating a general purpose on his part to charge both real and personal estate with the payment of debts and legacies, and under such circumstances the real estate is held to be onerated in aid of the personalty in payments of debts

and legacies. *Knotts* v. *Bailey*, 54 Miss. 235 ; *Turner* v. *Turner*, 57 Ib. 775 ; *Heatherington* v. *Lewenberg*, 61 Ib. 372.

There frequently arise cases in which, looking to the will and all its parts, some uncertainty remains as to the real intent of the testator, cases in which there is not a clear and express charge upon the real estate, but where the implication more or less strongly appears on the face of the will to charge it with legacies. It is frequently said that, in the absence of an express charge, the lands are free, unless by clear implication the purpose of the testator is found to charge it. But it is not necessary that this undoubted inference shall be found on the face of the will itself. In cases of doubt, it is proper to look to the character of the legatee, for this may aid in discovering the purpose of the testator. If the legatee is a stranger, or a child for whom other provisions are found in the will, the purpose of the testator to charge the real estate must more clearly appear than if the legatee is one having a natural claim upon the bounty of the testator, and for whom no other provision is made. Roper on Legacies, 682.

Looking at the will in the light of these principles, we think it clear that the testator intended the legacies to Robert Cady and Julia Reddick to be paid in any event, and that they are by the will charged upon the real estate of the testator. They were dependent infants, members of his family and standing to him in the relation of adopted grandchildren. He speaks of them as his grandchildren, and exhibits a clear purpose to provide for their education and support during minority and for small legacies upon their attaining majority. After having given devises of lands to his three children, the testator blended the residuum of his estate real and personal into one mass, charged it with payment of his debts, and directed the remainder to be distributed in unequal parts to his children. It is manifest that the legacies were to be paid out of some part of the testator's estate. It cannot be seriously contended, as is suggested by counsel for appellants, that the purpose was to give the legatees no right to subject any part of the estate to the payment of the legacies, but only a personal right of action against James M. and

Mary Adella Cady. There is neither principle nor authority to support such view.

If the purpose of the testator was that these legacies should be paid out of his estate, the question is upon what part was it primarily charged. We have seen that the real and personal estate was blended and the presumed freedom of the real estate overthrown.

But looking at the residuary clause it is entirely certain that it was not the purpose to charge the property thereby dealt with, *in the hands of the executor in bulk,* with the legacies. The residuum after payment of debts was to be distributed, one-fourth to William Cady, and the remaining three-fourths to James M. and Mary Adella. To charge the residuary estate would be to diminish the distributive part of William Cady therein to the exoneration of the portions of James M. and Mary Adella, who were directed to pay the legacies. Unless therefore the purpose of the testator be thwarted, either in denying to the legatees the sums given to them, or by fixing them in part upon the portion devised to William by the residuary clause, it is clear that they must be fixed upon the portions specifically devised to James M. and Mary Adella, or upon that part passing to them under the residuary clause.

We think the charge is primarily upon the land specifically devised. The executor is directed to convert the remainder of the estate into money. This would carry with it freedom in the hands of the purchaser from the charge. *Turner* v. *Turner,* 57 Miss. 775.

It is to be noted, that the distribution of the residuum was to be made at once by the executor, while the legacies given were payable upon the majority of the legatees. The charge therefore upon the property specifically devised more certainly effectuates the intent of the testator by securing the ultimate payment of the legacies.

We therefore conclude that the legacies were primarily chargeable upon the lands devised to James M. and Mary Adella Cady ; that James M. Cady was liable to the payment of one-half thereof, $500, and the portion devised to Mary Adella to the remaining $500 ; that James M. by reason of his reception of one-half of

the devise to Mary Adella was chargeable with one-half of said sum, and that the decree of the chancellor properly apportioned the liability.

Mrs. Short and Annie L. Cady, who are now the owners of all the property devised to James M. and of one-half of that devised to Mary Adella, join in the appeal and assign error through the same counsel. No error is assigned to the action of the chancellor in fixing the liability as between these parties. We do not, therefore, consider how it should have been apportioned as between them.

*Decree affirmed.*