## DELILAH PERKINS *v.* FIRST NATIONAL BANK OF YAZOO CITY ET AL.

WILLS. *Legacy.* *Charge on lands.*

Where, by the terms of a will, realty and personalty are so blended as to preclude distinction, an annuity for the life of the legatee, to be paid "out of any money belonging to the estate," is a charge on the land devised to one to whom all the balance of the estate is given.

FROM the chancery court of Yazoo county.

HON. EDWARD MAYES, Special Chancellor.

Mrs. Perkins, the appellant, was complainant in the court below; the First National Bank and others, appellees, were defendants there.

The bill alleged that the late Adolph M. Heath died seized and possessed of certain real estate in said county, which, by his will was devised to his wife, Emma Conn Heath; that under the provisions of said will complainant was given an annuity of $100 during the term of her natural life; that Emma Conn Heath sold said real estate to the defendants and left the state, and was now insolvent. The bill seeks to have the annuity fixed as a charge on the lands devised in the will. The defendants demurred to the bill, and the demurrer was sustained, and the bill dismissed. From that decree complainant appealed to the supreme court.

*Henry & Barbour*, for appellant.

To say that the bequest to Delilah Perkins is not a charge upon the *corpus* or income of the estate of Adolph M. Heath, would be to defeat the very purpose which the testator, in his brief will expressly set forth three separate times. It was clearly not his purpose that his said wife should dispose of his

entire estate at her pleasure, and thus defeat the legacy to ap-
pellant, and the will having been duly probated, the purchasers
of the estate had full notice that Emma Conn Heath had no
right to dispose of the same and thus defeat the bequest to
Delilah.

The phrase in the will "the same to be paid by my execu-
trix out of any money belonging to my estate" cannot defeat
the purpose of the testator. This expression has no signifi-
cance other than to impose upon the executrix the duty to pay
the annuity. To put the phrase most strongly in favor of the
defendants, the word "money" in the phrase is used synony-
mously with "income," just as if it read "the same to be
paid by my executrix out of any income of my estate." What
is income any way? It is defined by the Standard Dictionary
as "the amount of money coming to a person or corporation
within a specified time or regularly, whether as payment for
services, interest, or profit from investments." Surely the
testator did not mean that any annuity, likely to be extended
over many years, and which has continued since 1886 should
be paid out of money left at his death.

The annuity to appellant was in the nature of a demonstra-
tive legacy rather than a specific legacy, and is payable at all
events. *Smith* v. *Fellows*, 131 Mass., 20; also *Pierpont* v.
*Edwards*, 25 N. Y., 128; 57 Miss., 775; 54 Miss., 235; 61
Miss., 366; 67 Miss., 425; 70 Miss., 359; *Knotts* v. *Bailey*,
54 Miss., 235; *Turner* v. *Turner*, 57 Miss., 775; *Adams* v.
*Beckett*, 4 Met., 523; *Heatherington* v. *Lewinberg*, 61 Miss.,
372; *Cady* v. *Cady*, 67 Miss., 425; *Adams* v. *Beckett*, 5
Met. (Mass.), 280; *Smith* v. *Fellows*, 131 Mass., 20.

*Barnett & Perrin*, for appellees.

Generally, in the United States, however, a direction for the
payment of legacies out of the testator's estate has been held
to charge them on the reality, where nothing else in the will
appears to show that it was the intention of the testator to

limit the term "estate" so as to include only personalty. 19 Am. & Eng. Ency. (new ed.), 1353, note 4; *Turner* v. *Turner*, 57 Miss., 778; *Adams* v. *Beckett*, 5 Met. (Mass.), 280.

In *Knotts* v. *Bailey*, 54 Miss., 235, $500 by the second item of the will was given to D, by the fifth item "all the balance of my estate" was disposed of. The will in that case did not require the legacy to be paid "out of any money belonging to my estate," and there was a blending of both real and personal property.

In *Turner* v. *Turner*, 57 Miss., 775, William H. Turner was given the power to sell real estate to pay pecuniary legacies, and the court held that this power, in connection with other language, charged the real estate with the payment of pecuniary legacies, distinguishing *Adams* v. *Beckett, supra.*

In *Heatherington* v. *Lewenberg*, 61 Miss., 376, the court referring to *Knotts* v. *Bailey, supra,* says, "We see no reason to doubt the correctness of that decision, and it is decisive of the present case." Because the language of the residuary clause is "I give, devise and bequeath all the remainder of my property, real and personal, after the above legacies are fully paid," etc.

In *Cady* v. *Cady*, 67 Miss., 425, there was a blending of personal and real property, and the executor was given equal power over each. Moreover, in that case the two devisees of the real estate held to be charged were expressly required to pay the legacies.

In *Peebles* v. *Acker*, 70 Miss., 356, $1,200 "out of my estate" was given to M by S, by clause 2. By clause 3 it was provided that "the residue of my estate, real, personal and mixed, I give and bequeath to my wife and son," etc.

In the instant case to hold that it was the intention to charge real estate, would be to say that a conversion of realty into money was directed by the will, and no such intention is charged.

It will be noticed that the bill does not allege there was not, at the death of the testator, sufficient money or personal

property that would go to the executrix as such, out of which the annuity could have been paid.   Its subsequent waste was immaterial.   *Elloit* v. *Topp*, 63 Miss., 138;   *Stewart* v. *Robinson*, 31 So. Rep., 903; s.c., 80 Miss., 290.

WHITFIELD, C. J., delivered the opinion of the court.

The question is this: whether the legacy to the appellant is chargeable on the lands devised to the residuary devisee.    The provisions of the will are: (1) I give and devise all my worldly estate of every kind to my wife, Emma Conn Heath, in fee simple absolute, with the exceptions hereinafter named.    (2) I give to Mollie Peck Martin $10 to be paid by executrix out of any money left at my death.    (3) I give to Delilah Perkins $100 per annum during the term of her natural life, the same to be paid by my executrix out of any money belonging to my estate.    (4) I nominate and appoint my wife, Emma Conn Heath my sole executrix, without bond or security, and my sole devisee and beneficiary of my estate, with two exceptions in favor of Mrs. Martin and Delilah Perkins, above specified.'' The plain meaning of the testator is this: that his widow should have the whole of his estate—realty, and personalty, blended into one—after payment of the legacies named.    He himself obliterated all distinction between realty and personalty, blending the whole estate into one common mass, and devises all to his widow, except enough to discharge these legacies.    This court say in *Knotts* v. *Bailey*, 54 Miss., 239 (28 Am. Rep., 348): ''A will-constructed on that plan indicates clearly that the residuary devisee shall take whatever property remains after satisfying previous gifts.''    In that case the legacy was a mere general legacy, and yet was held a charge upon the lands.    The court looked to the environment, the situation of the testator and the legatee, who had lived many years in the testator's family, and rendered valuable services.   If it is clear, either by express provision or necessary implication, that the legacy is to be paid at all events, and that is what the

testator intended, that is the end of the matter, and the legacy is to be charged upon the lands. The true doctrine is well stated in *Cady* v. *Cady*, 67 Miss., 431 (7 South., 216): "While the books are full of cases in which discuscussion is had upon the question whether pecuniary legacies are or are not chargeable upon the real estate of the testator, and there is a conflict in the conclusions reached, the diversity of opinion is not greater than that which exists in other controversies where the courts seek to discover the intention of a party from language he has used by the application of arbitrary rules of construction. The sole difficulty is in discovering the intent of the testator, which being found, is to be enforced. Ordinarily, pecuniary legacies are payable by the executor, and out of the personal estate. The claim of the heir at law or of the devisee is ordinarily as much in the mind of the testator as that of the legatee, and, unless a contrary purpose appears from the will, it will be assumed that the testator intended that legacies are to be paid only out of his personal estate, and that, upon that being insufficient, the legacies must abate in whole or in part. But the single inquiry always involved is, what was the intent of the testator? This, being discovered, must be effectuated by the courts. Where the testator, for the purpose of paying his debts or legacies, blends his real and personal estate, giving to his executor equal power over each, and thus obliterates the distinction which the law makes between real and personal estates, the courts accept this as indicating a general purpose on his part to charge both real and personal estate with the payment of debts and legacies, and under such circumstances the real estate is held to be onerated in aid of the personalty in payment of debts and legacies. *Knotts* v. *Bailey*, 54 Miss., 235 (28 Am. Rep., 348); *Turner* v. *Turner*, 57 Miss., 775; *Heatherington* v. *Lewenberg*, 61 Miss., 372." It must be noted that this was an annuity, payable as long as the legatee lived. She might live many years, and the language of the opinion of Justice Chal-

mers (at page 376, 61 Miss.) is exactly apropos: "It could scarcely have been intended by the testator that the personalty should be tied up indefinitely to meet the yearly demands of the annuitants, whose rights would be sufficiently and more appropriately secured by the land." The case of *Turner* v. *Turner*, 57 Miss., 775, is a much stronger case for appellees than this. The testator divided the property there into three classes—First, lands; second, slaves; and, third, all other personal property; and it might have been argued with much ingenuity that the legacies were intended to be paid out of the other personal property—"all my other personal property of every description." Yet the court properly held that the legacies were chargeable upon all the property left. See, also, *Adams* v. *Beckett*, 5 Met. (Mass.) 280, in which there was an express direction that the charges named therein should be paid out of the personal estate alone, the testator directing that the charge should be paid "therefrom;" that is to say, from the personal estate.

There are no words limiting the funds out of which this legacy is to be paid. The testator three times declares his intention that the legacy shall be paid. First, he devises to his widow all, "with the exceptions hereinafter named;" second, he specifically mentions the exceptions; third, he repeats that she is to have all of his property of every kind, with the exception of the legacies given to the two legatees specifically named again. And all this, too, in a case in which he has blended realty and personalty into one common mass. It seems to us plain that the purpose of the testator was that this legacy should be paid at all events, and that it is a proper charge upon the lands involved. This is the doctrine of all the Mississippi cases and of the general American law. See *Knotts* v. *Bailey*, 54 Miss., 235; *Heatherington* v. *Lewenberg*, 61 Miss., 372; *Turner* v. *Turner*, 57 Miss., 775; *Cady* v. *Cady*, 67 Miss., 425 (7 South. 216); *Peebles* v. *Acker*, 70 Miss., 359 (12 South.

248); 19 Am. & Eng. Ency. Law (2d ed.) pp. 1354 (2), 1356 (3).

*The decree is reversed, the demurrer overruled, and the cause remanded, with leave to answer within thirty days from the filing of the mandate in the court below.*