ROBERTS *v.* BURWELL ET AL.

[78 South. 357, In Banc.]

1. WILLS. *Charges on realty. Waiver. Enforcement.*
   Where a testator by his will provided that each of the devisees of his land should deliver to his widow annually one bale of cotton weighing five hundred pounds, and thereafter by the consent of the widow a decree was rendered partitioning the land between the devisees and providing that the devisees should each pay annually as rent one bale of cotton. In such case the widow, by consenting to such partition of the land, did not waive any lien thereon or right therein not specially preserved to her in the decree under which the partition was made.

2. SAME.
   Under such a will, each devisee by accepting the provisions of the will and entering upon the enjoyment of the land thereby given to them became liable to deliver the cotton and on his or her failure so to do became liable in an action at law for the value thereof.

3. SAME.
   In such case the bale of cotton was a charge upon each devisee's share in the land, but not upon the agricultural products grown thereon and this charge was enforceable in a court of equity.

4. LIMITATION OF ACTIONS. *Actions not specially provided for. Charge on land. Devised. "Trust."*
   The bequest to the widow was not a trust within the meaning of section 3125, Code 1906 (section 2489, Hemingway's Code), and, is governed as to time within which suit must be brought by section 3097, Code 1906 (section 2461 Hemingway's Code), for the reason that the implied promise of each of the devisees to deliver one bale of the cotton to the widow annually is to perform a contract, the terms of which are contained in a written instrument, that is in the will.

5. EQUITY. *Multifariousness. Joinder of defendants.*
   While the failure of each of the devisees to deliver to the widow the cotton, which he or she was obligated by the will to do, constitutes a separate cause of action, nevertheless they may be joined in equity in one suit, for the reason that where the interest and liability of the defendants, though separate, flow from the same fountain, or radiate from the same center, or have a common connecting link, the joinder of such defendants and matters in the same suit is admissible.

6. EQUITY. *Multifariousness. Joinder of causes of action.*
   In a suit by the widow against the devisees and their grantees to enforce the charge imposed on the land by the will, an amendment alleging that she held a landlord's lien on all the agricultural products raised by a tenant on the land during a certain year, but that one of the defendants had entered upon the premises and taken possession of a bale of cotton and cotton seed raised by the tenant and also other personal property, made the bill multifarious, it not appearing either from the amendment or from the original bill, that a decision of any of the other matters involved would have any bearing upon the liability *vel non*, of such defendant, because of the alleged purchase of property upon which plaintiff had a landlord's lien.

7. SAME.
   Though a demurrer should have been sustained to the bill in such case on account of multifariousness still the bill should not have been dismissed, but should have been dealt with as provided by section 598, Code 1906 (Hemingway's Code, section 358).

APPEAL from the chancery court of Holmes county.
HON. A. Y. WOODWARD, Chancellor.

Suit by Lou Roberts against W. B. Burwell and others. From a decree dismissing the bill, H. S. Roberts, executor of Lou Roberts, deceased, appeals.

The Code sections referred to in the opinion are as follows:

Section 3125, Code of 1906 (Section 2489, Hemingway's Code): "Limitation of Express Trusts.—Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after; saving, however, to all persons under disability of infancy or

unsoundness of mind, the like period of time after such disability shall be removed; but the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years.''

Section 3097, Code 1906 (Section 2461, Hemingway's Code) : ''All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of action accrued, and not after.''

Section 598, Code 1906 (Section 358, Hemingway's Code) : ''Of Multifariousness.—If a demurrer for multifariousness shall be sustained the court may authorize amendments by directing separate bills to be filed without new process as to the parties before the court, and by the addition of new parties, or otherwise, as may be necessary or proper for the attainment of justice; but the uniting in one bill of several distinct and unconnected matters of equity against the same defendants shall not be an objection to the bill.''

*Geo. Butler,* for appellant.

1.  The bill did not become multifarious because of the amendment mentioned in the above quoted paragraph.  2.  Even if the amendment had the effect to make the bill multifarious, at common law, it was not multifarious under the statute.  3.  If the amendment made the bill multifarious at common law, or under the statute, the objection was to the form and not to the substance and could be reached only by a special and separate demurrer and not by a general demurrer.

There may be some question as to whether or not the chancery court had jurisdiction to enforce the statutory landlord's lien upon the cotton and live stock mentioned in the amended bill and if it did not, that is, if the matter therein referred to, was not within equity cognizance, the amendment did not have the effect to make the bill multifarious. *Neylands* v. *Burge,* 14 S. & M.

201; 14 Enc. Pl. & Pr. 197, 205; 6 Enc. Pl. & Pr. 342. However, the whole case made by the original bill is bottomed upon the will and the construction of the will of Burwell Roberts, deceased, and partition proceedings subsequent thereto. All parties to this suit claim by and under that will and the subsequent proceedings. Whatever rights the respective parties have to the land or to the rights growing out of the land, depend upon the will and the partition proceedings. So also the lien of Lou Roberts on the agricultural products and live stock mentioned in the amendment referred to grows out of and is bottomed upon the same will and the same proceedings.

Independent of the attempt to charge a lien against the land, the bill in this case, in so far as it seeks to reach the agricultural products, grown upon the land, and to subject them to complainant's claim, is maintainable on a well known and universally recognized principle of equity jurisprudence. Even if the bill had not sought to enforce a lien upon the land, inasmuch as the rights of all parties grew out of the same instrument and the same proceedings, it was maintainable under the principle announced in *Pollock* v. *Savings Institution,* 61 Miss. 293; *Nevitt* v. *Gillespie,* 1 How. 109; *Crawford* v. *Railroad Company,* 73 Miss. 708; *Blumer* v. *Ulmer,* 44 So. 161; *Telephone Company* v. *Williamson,* 101 Miss. 1.

It is too clear for argument that under this theory of the bill, both originally and as amended, it would not have been subject to the criticism of multifariousness.

The courts are not inclined to lay down any hard and fast rule applicable to all cases in defining multifariousness. Each case must depend upon its own particular facts. There is one test, however, universally employed and if the bill can stand that test, it is never declared to

be multifarious.  If the parties have one common inter-
est touching the matter of the bill or when one general
right is claimed, it cannot be said that the bill is
objectionable on account of its multifarious character.

In the following cases, decided prior to the passage
of the statute, now in force as section 598, Code of
1906, the court has treated fully of this subject.  *Butler*
v. *Spann,* 27 Miss. 234; *Waller* v. *Shannon,* 53 Miss.
500.

At common law, multifariousness, so called, was of two
forms; multifariousness as to matters and multifarious-
ness a to parties; 14 Enc. Pl. & Pr. 199.  The reason
for the rule against multifariousness is to protect the
defendant from unnecessary expenses and to serve his
convenience: 14 Enc. Pl. & Pr. 201, 202.  It applied to
common-law actions as well as to equity proceedings.
In common-law proceedings, it was commonly referred
to as misjoinder, while in equity proceedings it was
more commonly referred to as multifariousness.

The objection on the ground of multifariousness
was not favored at common law and the courts were
not inclined to look with favor upon such objection;
14 Enc. Pl. & Pr. 214.  It was because of the dis-
inclination to look with favor upon the objection that
the legislature adopted sections 598 and 599 of the
Mississippi Code of 1906.

Section 598 of the Code provides: "That uniting in a
bill. several and disconnected matters of equity against
the same defendants shall not be an objection to the
bill."  This section further provides that in case should
the bill be dismissed, because of its multifarious form,
that the court in its discretion might direct the fram-
ing of separate bills or of separate issues when that
course would best serve the ends of justice and con-
venience the defendant.

This statute has been under construction in several instances in this state, and under this statute as construed in *Henry* v. *Henry,* 79 Miss. 452; *Jones,* v. *Jones,* 99 Miss. 600; *New Orleans, etc., Railroad* v. *New Orleans, etc., Railroad,* 107 Miss. 453, and *Wherry* v. *Latimer,* 103 Miss, 534. The bill in this case as amended would not be multifarious as to the Burwell Mercantile Company or W. B. Burwell, even if it be conceded that as against these defendants, it joins distinct and unconnected matters of equity.

On the other hand, if the court is of the opinion that the amendment does not set out a separate and disconnected equity as against the Burwell Mercantile Company, that is, a cause or case that would give the chancery court equitable jurisdiction, the bill would not be multifarious even at common law. The equity court would simply decline to take or enforce jurisdiction of the legal demand set up in the bill otherwise calling for equitable relief. This is fundamental. *Neylands* v. *Burge,* 14 S. & M. 201; 14 Enc. Pl. & Pr. 197; 6 Enc. Pl. & Pr. 342; 14 Enc. Pl. & Pr. 205. It is elementary that only the prejudiced party can complain.

"It is well settled that the objection of multifariousness or misjoinder is a personal one and that only a defendant who is prejudiced thereby can be heard to complain of it." 14 Enc. Pl. & Pr. 212. This text is supported in this state by the case of *Wherry* v. *Latimer,* 103 Miss. 524; *Hopson* v. *Harrell,* 56 Miss. 202; *Washington* v. *Soria,* 73 Miss. 665; 19 So. 485; 55 Am. St. Rep. 555; *Graves* v. *Hull,* 27 Miss. 419.

This court has more than once decided that a demurrer could not be overruled in part or sustained in part. *Washington* v. *Soria,* 73 Miss. 665; *Grego* v. *Grego,* 78 Miss. 443; *Jones* v. *Jones,* 99 Miss. 600; *New Orleans, etc., Railroad* v. *New Orleans, etc., Railroad,* 107 Miss. 453; *Wherry* v. *Latimer,* 103 Miss.

524; *Graves* v. *Hull,* 27 Miss. 419; *Garner* v. *Lyell,* 35 Miss. 176; *Gibson* v. *Jayne,* 37 Miss. 164; *Hentz* v. *Delta Bank,* 76 Miss. 429, and other authorities too numerous to mention.

"Second. In event the bill as amended is multifarious and that the demurrer because thereof was properly sustained, should it have caused it to be amended by the filing of separate bills as provided by section 598, Code of 1906, although no request so to do was made by the complainant?"

The answer to the first question would seem to render a discussion of this interrogatory unnecessary, but it occurs to me that if the bill was multifarious, and the demurrer was sustained on this ground, that the court of its motion should have granted the complainant the right to make amendment by directing a separate bill to be filed.

At common law it seems that "sometimes instead of authorizing an amendment, the court will put the complainant to his election as to which of his causes of action he will continue to prosecute," 14 Enc. Pl. & Pr. 215, and this course was pursued by this court under our statute in *Nelms* v. *Brooks,* 105 Miss. 74.

The suit primarily is to enforce a suit against the land and as the rights of all the parties grow out of this instrument, they are joined in one suit. In this respect the case is very similar to the case of *Nelms* v. *Brooks, supra.* In that case the bill was demurred to because it was multifarious; the lower court overruled the demurrer, and an appeal was prosecuted to the supreme court; the supreme court decided that the bill was multifarious, reversed and remanded the case for trial of one issue; which the court found stood at the threshold of the litigation and which if decided, would end all further litigation or open the door for a settlement of the other matters of

the issue. · And so in this case, the decision on the construction of the will, etc., lies at the very threshold of the case and if the decision is adverse to the complainant, it will end this litigation, and if it is favorable to the complainant, it will open the door for an adjustment of all matters in dispute.

It is submitted that the bill in this case as amended is not multifarious; that if it is multifarious, the question is not raised in the manner contemplated by law; that if it is multifarious, the court should have put the complainant to his election or should have directed the filing of separate bills and thus have enabled complainant to have the case passed upon on its merits.

*Boothe & Pepper, Elmore & Ruff* and *W. L. Dyer,* for appellee.

First: "Assuming, but merely for the sake of this memorandum, that the bill as originally framed is not multifarious, did it become so when the amendment was added thereto by which it is sought to recover from the Burwell Mercantile Company the value of certain agricultural products and live stock alleged to have been purchased by it from Orange Leason, an alleged tenant of Lou Roberts and on which she claims a landlord's lien because of supplies furnished to Leason?"

Second: "In the event the bill as amended is multifarious and that the demurrer because thereof was properly sustained, should the court have dismissed the bill or should it have caused it to be amended by the filing of separate bills as provided by section 598, Code of 1906, although no request so to do was made by the complainant."

1. If not multifarious the bill became so because of the amendment pointed out by the court. 2. The amendment

made the bill multifarious at common law, and the common-law rule has not been changed by statute. 3. The objection to the amendment was made both as to the form and substance thereof, and is raised and covered by the general demurrer, and also by alleging separate grounds of demurrer.

A "time-honored formula" described multifariousness as meaning the improper joining in one bill of distinct and disconnected matters and thereby confounding them; but what is more familiarly understood by multifariousness, as applied to a bill is where a party is brought in as a defendant upon a record, with the large portion of which, and of the case made by which, he has no connection whatsoever. Story, Eq. Pl. 407; *Morris* v. *Dillard,* 4 S. & M. (Miss.) 643; *Darcey* v. *Lake,* 46 Miss. 115.

Matters entirely disconnected cannot be properly joined in equity is the common-law rule. It is so charged by statute, section 598, Code 1906, as not to be a ground of objection as against the same defendant. But the statute in no way affects disconnected parties or subjects. *Columbus* v. *Humphires,* 64 Miss. 248, 1 So. 232.

Hence, where the causes of objection united in the bill against several defendants, requires separate proof and decrees as to each of them, or separate defenses, the bill is multifarious. 14 Enc. Pl. & Pr. 197, and 198; *McGowan* v. *McGowan,* 48 Miss. 553.

It is insisted by appellant that the bill is not multifarious with the amendment added because it is connected by one common right. In reply to which we insist that the rule is, that if the separate matters are connected by one common right with the entire subject in dispute, the bill is not multifarious and not otherwise and in this case the separate matters are not connected with the entire subject in dispute.

The rule asserted by us is the one laid down in the Mississippi case just cited. So a bill is multifarious that states one or more causes of action against a portion of the defendants and another cause of action against another portion of the defendants. 46 Miss. 115. *Church* v. *Citizens St. R. Co.,* 78 Fed. 526; *Ayers v. Wright,* 8 Ired. Eq. (N. C.) 229; *Walker* v. *Powers,* 104 U. S. 245; 1 Whitehouse Eq. Pr. secs. 109, 110, 112; *Jones* v. *Foster et al.,* 50 Miss. 58, citing *Watson* v. *Cox,* 1 Ired. Eq. Rep. 289; Adams, Eq., 601, 602; *Roberts et al* v. *Starke,* 47 Miss. 257.

The rule of multifariousness is summed up in Gibson's Suits in Chancery, section 292 and also in note 14 Enc. Pl. & Pr. 199.

And we maintain that there is no lien under the will and partition proceeding on this cotton and live stock, regardless of the fact whether or not there is a lien upon the claims set up in said bill against the other defendants, which we by no means admit.

Lou Roberts did not elect to take any if the land of her deceased husband and did not get any, but only a right to occupy the homestead set apart at her request to Arthur and Pearl Roberts against whom she also asserts a claim for cotton in the bill, which she alleged they owed her and failed to deliver. She avers in the amended bill, "that during the year 1914, she furnished to Orange Leason money and supplies with which to make a crop on a part of said land occupied by her during the year 1914, and that by reason thereof she has and holds a landlord's lien upon certain livestock and all the agricultural products raised by the said Orange Leason on said land during the year 1914."

Now we respectfully submit that this averment does not entitle her to a lien of any sort. She does not allege that she was landlord and rented the land to

Leason for the year named; she does not state the amount of money and supplies she furnished him, but that it was done to enable him to make his crop on "a part of said land occupied by her." She does not claim that he was her tenant. If she was occupying the homestead set apart at her request to Arthur and Pearl Roberts, and the presumption is that she was, and Orange Leason was the tenant of Arthur and Pearl Roberts, the fact that she furnished him money and supplies to make a crop thereon, did not make him her tenant and she his landlord; and if he in fact was not her tenant, and she in fact was not his landlord, she would not hold a landlord's lien for the amount of the money and supplies furnished by her. And if she had rented some of said land from Arthur and Pearl Roberts and subrented to Leason, or had occupied and rented some of said land from John Doe or Richard Rowe and subrented to Orange Leason while she may have acquired a landlord's lien for the amount claimed, evidently the lien so acquired would not as claimed by counsel for appellant in answer to the court's inquiry, "grow out of and be bottomed upon the will and partition proceeding."

If we went no further than this in our purpose to show the vice of the amended bill, the conclusion is inevitable that no rule or indicia laid down by the courts can save the bill of complaint from being rendered fatally multifarious by the amendment. However, we respectfully submit that the vice of the amended bill simply adds to the load of multifariousness already carried by the bill before the amendment was added.

*Waller* v. *Shannon,* 53 Miss. 500, cited by appellant, is not analogous to the instant case. In that case an insolvent debtor conveyed a parcel of land to his father-in-law, and another to his son, both of whom, after holding a short time, conveyed to the debtor's wife, and

one piece of .the land the wife thereafter conveyed to a sister-in-law, who took with notice. Obviously, a bill seeking to subject both pieces of land and making all the vendors· and vendees parties is not multifarious. The same can be said of the decision of the court in the case of *Butler* v. *Spann,* 27 Miss. 234, where several claim under one title, and bring their suits against various defendants, who claim the same estate under distinct and separate sales of different parcels thereof to them separately, where the gravamen of fraud or wrong in the sales is the same and equally applies to all, the objection of multifariousness will not apply. The same may be said of the other cases cited on this point. None of them are analogous.

Appellant contends that the bill in this case as amended would not be multifarious as to the Burwell Mercantile Company or W. B. Burwell, even if it be conceded that as against these defendants, it joins distinct and unconnected matters of equity, and that· it did not, under any view by this, amendment become multifarious as · to the other defendants, and that because the demurrer is a general one, joined in by all the defendants, the question sought to be raised ·cannot be considered.

In answer to this we contend that the demurrer is both general and special. It is general in setting up the following grounds of demurrer to-wit: 1. Want of equity on the face of the bill; 2. Multifariousness; 3. Vagueness and uncertainty, etc. And the demurrer specifically raises other matters of form as well as substance.

The demurrer is special because it points out specifically the grounds upon which the bill and amended bill are without equity and are vague and uncertain, and multifarious, and the other grounds of demurrer are distinctly pointed out by the demurrer itself.

And the vice contained in the amended bill to which all the defendants demur, affects each and all the defendants, as all are prejudiced thereby, and the injustice will be rendered complete if the demurrer is overruled.

Appellant contends that, "if the bill sets forth two equities against the Burwell Mercantile 'Company it is not demurrable, or objectionable. If it does not set forth two equities, it is not demurrable or objectionable even at common law . . . and that whatever objection, if any, might have been made to the bill because of multifariousness . . . cannot be raised in the manner in which the defendants undertook to raise it in this case for two reasons. In the first place the objection could only be raised by a special or separate demurrer;" and cites *Darcey* v. *Lake,* 46 Miss. 109, and gives a part of what the court says, but we submit that appellant does not give what we regard as the most vital point therein cited. Appellant says special or separate demurrer, and the two kinds of demurrer named are not identical. A general demurrer challenges in general terms the right of the plaintiff to have any relief on the facts stated in the bill. Its usual form is want of equity on the face of the bill.

A special demurrer points out with precision the particular defect which the defendant supposes to be fatal to the cause and may be directed to the whole or any material part of the bill.

A separate demurrer is one made by the defendant separately where there is more than one defendant, and may be either general or special or combine both.

Now, what the court did say on this point in the case of *Darcey* v. *Lake,* above cited is as follows: "Multifariousness is an objection to the frame and form of the bill, which, as we have seen can be taken by the defendants only by demurrer" (and not special demurrer or

separate demurrer as claimed by opposing counsel).
Continuing the court said:

"Demurrers are either general or special. They are
general when no particular cause is assigned, except the
usual formulary that there is no equity in the bill. They
are special when the particular defects or objections
are pointed out. The former will be sufficient when the
bill is defective in substance. The latter is indispensable
when the objection, is to the defects of the bill in
point of form. The want of due form constitutes a
just objection to the proceeding in every court of jus-
tice."

And the court concluded by declaring that the de-
murrer being general, it only went to the form and
structure of the bill and the cause was reversed and re-
manded. In other words, the particular defects which
the defendants relied on as fatal to the cause made by
the bill were not specifically pointed out. See also, 10
R. C. L. Equity, 471 and Enc. Pl. Pr. already cited.

As to what the court did in the case of *Nelms* v.
*Brooks,* 105 Miss. 74, relied on by appellant, it is clear
that the action of the court in that case is reversing and
remanding for trial under the issue of *devisavit vel non*
tendered in the lower court when the demurrer was
overruled was proper, and that nothing else could have
been properly done.

In the last two paragraphs of complainant's brief
we simply call attention to the fact that a very liberal
construction and decision is requested in the first on be-
half of appellant and in the last a rigid rule is asked
to be applied to appellees.

We only ask that the rights of the appellees may be
determined by the well-established principles and rules
of equity pleading and practice, and we respectfully
submit that under these long-sanctioned and time-honored
rules the action of the court below should be sustained

for the reasons, that the amended bill of complaint removes all doubt of the multifariousness of the bill and the action of the court below should be affirmed for that if no other reason shown by the record existed.

SMITH, C. J., delivered the opinion of the court.

## IN DIVISION A.

Burwell Roberts died during the year 1905 seized and possessed of certain land, and leaving surviving him his widow, Lou Roberts, five children, and two grandchildren, the son and daughter of a deceased child. By his last will and testament he devised each of these children by name a one-sixth interest in this land, and to the grandchildren, also by name, a one-sixth interest therein jointly. The will recited that:

"The condition of the last six bequeaths are that my wife, Lou Roberts, shall not be disturbed in the possession of the house in which she and I have had our home during the last years of our lives together, as long as she lives. And that each of the last six beneficiaries of this, my last will and testament shall deliver to my wife, Lou Roberts, one bale of cotton weighing five hundred pounds each (see Amended Record 42) unless my wife prefers to receive a child's part in the distribution of my lands and real estate, in which case each of said beneficiaries to whom a one-sixth interest of my lands and real estate has been bequeathed shall receive a one-seventh interest, instead of a one-sixth interest, my wife receiving the remaining one-seventh share of my lands and real estate."

In 1907 a proceeding for a partition of this land among the devisees was begun in the court below in which the widow appeared and, by a separate petition, joined in the request for the partition of the land, which petition, after setting forth that she accepts the six bales of cot-

117 Miss.—30

ton allowed her as rent under said will and waives her right to a share of the lands, continued as follows:

"Petitioner states that said minor children are living with her on the old home, and she prays that when said land is divided that the commissioners shall first assign to said minors their share of the land, including the residence now occupied by the petitioner and said minors, and that the remainder of the said land be divided among the other heirs."

The minors here meant are the two grandchildren referred to in Burwell Roberts' will. In due course a decree was rendered partitioning the land in accord with the widow's desire, the decree appointing commissioners so to do reciting:

"That the said Annie Buchannon, Frank Roberts, Champ Roberts, Simon Roberts, and Eliza Hall shall each pay annually to Lou Roberts as rent one bale of cotton, weighing five hundred pounds, as long as she shall live, as required by the terms of the will of Burwell Roberts, deceased."

Afterwards Champ Roberts conveyed the land set apart to him in the decree to W. L. Dyer, and Simon Roberts conveyed his to W. B. Burwell, and in 1912 that set apart to the two grandchildren was sold for taxes to W. B. Burwell and D. H. Ship. In 1914, Lou Roberts, the widow, exhibited her bill in the court below alleging in substance the foregoing, and further, that none of these devisees had delivered to her any of the cotton which by the will of Burwell Roberts they were charged to do, making parties defendant all of the aforementioned devisees of Burwell Roberts' will, the present owners of the land devised to Champ and Simon Roberts and to the two grandchildren, and also certain persons alleged in the bill to have purchased cotton grown on the land devised. The bill also alleged that the sale for taxes of the land devised to the grand-

children was void for reasons not here necessary to be set forth. The prayer of the bill is framed upon the theory that the cotton directed to be delivered to her by the will of Burwell Roberts is a charge upon the land devised and upon agricultural products grown thereon. This bill was afterwards amended by adding thereto the following: ·

"She avers that during the year of 1914 she furnished to Orange Leason money and supplies with which to make a crop on a part of said land occupied by her during the year 1914, and that by reason thereof she has and holds a landlord's lien upon all the agricultural products raised by the said Leason on said land during the year 1914; that some time since, the Burwell Mercantile Company, notwithstanding complainant's rights in the premises, entered upon the said premises and took into its possession one bale of cotton and cotton seed raised by said Leason during the year 1914 as aforesaid, of the value of sixty-six dollars, and also took into their possession one horse, cow, and calf of the value of one hundred and fifty dollars, to which they had no right, title, or lien, and to which the complainant in this case has and holds a lien under and by virtue of chapter 79 of the Mississippi Code of 1906. ·

"Whereof complainant prays that in addition to making answer to the matters and things set forth in the original bill of · complaint, and upon the final hearing hereof, complainant prays that she recover of and from the Burwell Mercantile Company the value of said produce and live stock taken and converted by them to their own use as aforesaid. And she prays generally for general relief." ·

To this bill a general demurrer was interposed by all of the defendants, containing, among other grounds of demurrer, the following: First, that complainant has an adequate and complete remedy at law; second, that

appellant is estopped by the decree in the partition proceeding from claiming any lien on or right in the land here in controversy; third, the three and six year statutes of limitation; fourth, multifariousness.  This demurrer was sustained by the court, the bill dismissed, and from the decree so doing this appeal is prosecuted by H. S. Roberts, executor of the estate of Lou Roberts, she having died in the meantime.

Appellees' main contention in support of the decree of the court below is that by consent to the division of the land among the devisees in Burwell Roberts' will she waived any lien thereon or right therein not specifically preserved to her in the decree under which the partition was made.  This contention is without merit.

By accepting the provisions of the will and entering upon the enjoyment of the land thereby given to them, each of the children of Burwell Roberts severally, and the two grandchildren jointly and severally, became liable to deliver annually to Lou Roberts one bale of cotton, and upon his or her failure so do he or she became liable in· an action at law for the value thereof (*Red* v. *Powers,* 69 Miss. 242, 13 So. 586); the bale of cotton directed to be delivered by each being also a charge upon his or her share in the land but not upon the agricultural products grown thereon, enforceable by a suit in equity.  *Cady* v. *Cady,* 67 Miss. 425, 7 So. 216; *Perkins* v. *Bank,* 81 Miss. 362, 33 So. 18.  In other words, each of the devisees in the will, by entering upon the enjoyment of the land devised, promised by implication to deliver to the widow one bale of cotton annually, the performance of which promise by the terms of the will is secured by a lien on his or her interest in the land, but not upon the agricultural products grown thereon, from which it follows that the bill discloses no liability as to those defendants who purchased agricultural products raised on the land, and, had they filed separate

demurrers, the bill could have been dismissed as to them.

The bequest to Lou Roberts is not a trust within the meaning of section 3125, Code of 1906 (section 2489, Hemingway's Code), and is governed as to the time within which suit must be brought by section 3097, Code of 1906 (section 2461, Hemingway's Code), for the reason that the implied promise of each of the devisees to deliver one bale of cotton annually to Lou Roberts is to perform a contract, the terms of which are contained in a written instrument, that is, in the will. *Washington* v. *phone Co.* v. *Williamson,* 101 Miss. 1, 57 So. 559.

While the failure of each of the devisees to deliver to Lou Roberts the cotton which he or she, as the case may be, was obligated by the will to do constitutes a separate cause of action, nevertheless they may be joined in equity in one suit for the reason that where "the interest and liability of the defendants, though separate, flow from the same fountain, or radiate from the same center, or have a common connecting link, the joinder of such defendants and matters in the same suit is admissible." Gibson's Suit in Chancery (2 Ed.), section 149; *Tribette* v. *Railroad Co.,* 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; *Cumberland Telephone Co.* v. *Williamson,* 101 Miss. 1, 57 So. 559.

The amendment to the bill hereinbefore set forth made the bill multifarious, for it does not appear, either from it or from the original bill, that a decision of any of the other matters herein involved will have any bearing upon the liability *vel non* of the Burwell Mercantile Company, because of the alleged purchase by it of property upon which Lou Roberts is alleged to have a landlord's lien, so that the demurrer for this reason should have been sustained, but the bill should not have been dismissed, but should have been dealt with as provided by section 598, Code of 1906 (section 358, Hemingway's Code).

*Reversed and remanded.*

## IN BANC.

PER CURIAM.    This cause was decided on a former day by Division A of this court, but the judgment then rendered was afterwards set aside and the cause submitted to the court in banc, a majority of which are of the opinion that the decree of the court below should be reversed, and the cause remanded, to be proceeded with in accordance with the opinion rendered by Division A on the former hearing, which is now adopted as the opinion of the court.

*Reversed and remanded.*

