# Torian *v.* Sanders.

(Division B.  Feb. 1, 1937.)

[172 So. 142.  No. 32552.]

Holmes & Bowdre, of Hernando, for appellant.

**R. F. B. Logan** and **John W. Barbee,** both of Hernando, for appellees, Mrs. Gaither and Mrs. Allen.

Dulaney & Bell, of Tunica, for appellee, J. W. Sanders.

**Howie & Howie,** of Jackson, for appellee.

Argued orally by **F. C. Holmes**, for appellant, and by **J. W. Dulaney** and **R. F. B. Logan**, for appellees.

**Griffith, J.**, delivered the opinion of the court.

Mrs. C. T. Knight, a childless widow, a resident of De Soto county, died on October 3, 1934, at an advanced age. Although she had never had any children of her

own, so far as the record discloses, there had been brought into her home, during the lifetime of her husband, a child named Helen, who was later adopted by Mrs. Knight, and who, at the date of Mrs. Knight's will, had married Dr. Howard and gone to live in her husband's home. After Mr. Knight's death, another child, Kate Nash Torian, was taken into Mrs. Knight's home, and was by her reared almost from infancy. This child was later adopted by Mrs. Knight, but without change of name, and was a minor residing with Mrs. Knight until Kate's marriage, only a short time before Mrs. Knight's death—or, according to one statement, after Mrs. Knight's death.

Mr. Knight left to his wife by will a considerable estate of which there remained at Mrs. Knight's death, a delta plantation called Long Pond, containing about 700 acres, and also several smaller tracts in the hill section of the county; the hill lands aggregating about 700 or 800 acres. Mrs. Knight owned, in her own right, a delta plantation called Glover, consisting of about 2,200 acres, the larger part of which was in cultivation, and that apparently was true also of the other lands.

On September 23, 1929, Mrs. Knight made her will by which she devised the lands mentioned, and also made numerous pecuniary bequests. It will be at once observed that this will was made at a date when the artificial prosperity which had prevailed for a few years theretofore had not yet broken into one of the country's most disastrous depressions, and when apparently but few realized the nearness of the approach of that world-wide misfortune. The testatrix provided in her will that her executor should have five years to wind up her estate and to execute the provisions of her will. Had the prosperous conditions prevailing at the date of the execution of the will continued to exist, everything directed by her to be done could have been accomplished without

serious difficulty. But when the depression settled over the country in 1930, and continued even until Mrs. Knight's death, large plantation property, unless managed with exceptional judgment and industry, was scarcely able to pay operating expenses, including taxes and the necessary upkeep and replacement of livestock and farm machinery. And the situation had become such when this hearing was had in 1935 that there were debts, including costs of administration, against the property of approximately $45.000 and with but little personal property left out of which to pay same, to say nothing of the pecuniary legacies. none of which have been paid.

The testatrix by several codicils attempted to meet the situation brought about by the depression, and yet at the same time to secure the current execution of the main or dominant purposes of her original will. In her will she had left all the real property which she acquired through Mr. Knight's will to Helen Knight Howard and to two nieces of Mr. Knight. and the other real property. the Glover plantation. she devised to Kate Nash Torian. But as to the latter. who was yet a child, she went further and provided by item IX of her will that "if the bequests and devises herein to Kate Nash Torian shall fail to produce her a monthly income of two hundred ($200.00) dollars then my trustee (executor) is to provide this amount for her out of other property before any other bequests or devises shall take effect." On January 28, 1932, it must have become apparent to the testatrix that the monthly income to Kate Nash, which she had provided in her original will, was in danger of failure for want of plantation profits; and it having become necessary for the testatrix to encumber Long Pond plantation to the extent of $15.000, there being already a like encumbrance on Glover, so that Mrs. Howard's income from the property devised to her would also likely disappear, Mrs. Knight, on the date last aforesaid,

made codicil No. 5 to her will as follows: "I will and bequeath that the said Joe Sanders shall have the use of the Glover place for the first four years after the will takes effect, for the annual rental of Twenty Five Hundred ($2500) Dollars per year. I will and direct that out of the proceeds from the rental of the Glover place during the first four years that only one hundred ($100) per month be paid to Kate Nash Torian and that the balance of said rental be paid over to Helen Knight Howard during the first four years for the education of her two daughters Clemmie Howard and Helen Howard."

Joe Sanders, or J. W. Sanders, mentioned in said codicil, was the executor appointed to administer the 'entire will; he had managed all these properties for Mrs. Knight for many years, and resided at the plantation house on Glover. Other portions of the will, as well as other codicils, evidenced Mrs. Knight's confidence in his ability and loyalty. The devise of the use of Glover to him for the four years for the sum mentioned was, as we believe, a plan or method by which she deemed she could be best assured under the pall of depression which then hung over all such property, of the working out of at least a living monthly income to her adopted daughter, Kate; and by the force of connection of the payment from the remainder of the prescribed rent to Mrs. Howard in the same codicil as that provided for Kate Nash, this codicil took the place of and stood in the same situation of absolute priority which was expressly provided by the above-quoted provision of item IX of the original will. This assurance would come from the elements of the personal character of Sanders, just mentioned, but, in addition, there would be the personal liability of Sanders later to be mentioned.

We do not deem it necessary to enter upon refinements of terms or definitions as to the character of estate devised to J. W. Sanders by the four-year codicil above

mentioned; we content ourselves with the statement of what we find to be its dominant purpose, and in accordance therewith, its position of priority over other bequests and devises. Counsel have argued that the four years' devise to Sanders is but a chattel real, being less than a life estate or one of inheritance, and is, therefore, but personalty which must abate and lapse, together with all other personal bequests, because of the insufficiency of personal property to pay debts. While it is the general rule that personal bequests lapse in the absence of personalty to satisfy them, this is not an absolute rule and must yield to the intention of the testator, when that intention is sufficiently disclosed, as can be seen from the instructive case, Stuart v. Robinson, 80 Miss. 290, 31 So. 903, 92 Am. St. Rep. 603. And we think the intention of the testatrix, above adverted to, is strengthened so as to place the matter beyond fair doubt when we consider that under a devise of use, such as was granted to Sanders, the acceptance thereof binds him to make the payments stipulated whether he makes the same out of the use or not. 28 R. C. L., pp. 307, 308; Red v. Powers, 69 Miss. 242, 13 So. 586; Roberts v. Burwell, 117 Miss. 451, 78 So. 357.

We are of the opinion that, under the peculiar circumstances of this case, the devise of the four years' use of the land to Sanders passed an interest in the land itself (69 C. J., p. 385) not subject to the general rule of entire abatement; and we think the further rule under such devises applies that where the use of real property is given, the presumption is that the net income or profit is meant and that the beneficiary must pay out of the gross receipts all expenses of a reasonable upkeep, taxes, and like charges against the devised property (69 C. J., p. 387), not to include, however, in this case, the interest on its previous or mortgage debts. And being under the conditions here present a nonabatable interest

in the land, the devise must contribute only proportionally to the cost of administration and other debts, except the mortgage debts. That the devisee, Sanders, should be chargeable with the taxes and upkeep comes also from the view of this devise already expressed, to wit, that it was a means or plan resorted to by the testatrix on those dark days to assure to the particular beneficiaries in whom she would naturally be the most interested, the monthly necessary income therein mentioned which could hardly have been a safe method or plan if the taxes on the Glover place, amounting to approximately $3,000 a year. were not required to be taken care of by Sanders in addition to the express amount charged upon the land through him, especially since the term was for four years, and the Glover place was by far the largest and most productive as compared with all the remainder of the property.

The matters dealt with in the foregoing paragraphs are those to which the greater part of the argument of the various parties in interest has been devoted. Other questions raised will be dealt with by us in a brief manner without going into specific reasons which would unduly extend this opinion. We are of the opinion that no part of Glover plantation can be called upon or encumbered or sold to pay the mortgage encumbrance upon the Long Pond place. nor that the other devised property may be called upon to pay any part of the mortgage encumbrance on Glover. That five years will be allowed from the date of the death of the testatrix to conclude the execution of the will. That the proceeds of the sale of the real estate in Tennessee shall be applied half and half to the mortgage indebtedness on Glover and Long Pond (item XIII). and that all the available net rents throughout said five years. but not including the first four years of Glover. shall be likewise applied (item III, codicil IV), and that any other avail-

able personal property shall be applied to the other debts including the cost of administration, and that as to any deficit in said debts, not including the mortgage debts, all the devises shall contribute proportionately according to value.

As to all other questions decided by the chancellor, his decree is affirmed; and as to those expressly and definitely reserved by him, we express no opinion, since we are not authorized to adjudicate issues not passed upon by the chancellor expressly or by necessary implication.

Affirmed in part, and in part reversed and remanded.